UNITED STATES, Appellee

v.

JOHN A. BIGGER, Corporal U. S. Army, Appellant

2 USCMA 297, 8 CMR 97

No. 456

Decided March 9 1953

Martin J. Hansberry, Esq., LT. COL. George E. Mickel, U. S. Army, LT. COL. Stewart H. Legendre, U. S. Army, LT. COL. Herman P. Goebel, Jr., U. S. Army, 1ST LT. John D. Calamari, U S. Army, and 1ST LT. Patrick H. Thiessen, U. S. Army, for Appellant.

LT. COL. Thayer Chapman, U. S. Army, and 1ST LT. Eugene L. Grimm, U. S. Army, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

This case is before us on both a certificate from The Judge Advocate General of the Army and on a petition for review filed on behalf of the accused. Because the offense was committed prior to the effective date of the Uniform Code of Military Justice, 50 USC §§ 551–736, the accused was tried by a general court-martial at Taegu, Korea,

upon charges of premeditated murder in violation of Article of War 92, 10 USC § 1564. The court-martial returned a finding of guilty as charged and sentenced him to be executed. The findings and sentence were approved by the convening authority, but the board of review in the office of The Judge Advocate General, one member dissenting, affirmed only so much of the finding as involved the lesser included offense of unpremeditated nurder and approved only so much of the sentence as provided for a dishonorable discharge and confinement at hard labor for life.

## I

At the time the alleged offense occurred, the accused was a member of the 514th Transport Truck Company then located near Chung-Ju, Korea. On the evening of April 5, 1951, he, and at least one other colored soldier, entered the home of Song Bang Son, a Korean woman. She was there with her husband, who was asleep, and her son and baby. One of the soldiers awakened her husband and asked him to find a woman for them. A scuffle ensued and the soldier pushed the Korean to the floor. After apparently being offered some cigarettes the Korean agreed to comply with the soldiers' demands, and all except the Korean wife left the room. A short time later she left by another door and went to a neighbor's house where she took refuge. After a short period of about ten minutes she heard a gunshot which caused her to go out into the yard where she found her husband lying on the ground. She asked what had happened and he replied that a colored soldier had shot him. He shortly thereafter died from the wounds received.

There were no eyewitnesses to the shooting and the identification of the accused as the perpetrator was proved by the following facts and circumstances: A young Korean boy identified the accused as being present at the time of the shooting; this boy identified the accused at a line-up of soldiers and the accused in his statement concedes that the boy was present at the time and place when he demanded a woman; ac-

**300**

cused admitted having gone to the house on the evening in question and having asked a Korean man to obtain a woman for him; a companion of accused testified as to their presence in the same Korean house and their demands for women; the time between the scuffle and the shooting was short; only one shot was fired and the victim had been hit by only one slug; the accused was armed with a carbine, and during an investigation of the shooting the following morning a military policeman found a .30 caliber carbine case at the scene of the crime; and by test-firing and comparison this case was identified as having been fired by and extracted from accused's gun.

## II

The Judge Advocate General of the Army certified the record of trial to this Court requesting that we determine whether the action taken by the board of review upon the death sentence was correct under the provisions of Article 66(c), Uniform Code of Military Justice, 50 USC § 653. In addition the accused's petition for review was granted by this Court, the scope of review being specifically limited to the issue certified by The Judge Advocate General and the sufficiency of the instructions given by the law officer. However, in the briefs appellate defense counsel have assailed the sufficiency of the evidence and certain alleged irregularities in the conduct of the trial. Were it not for the fact that this was a death case and that even though reduced, accused still is sentenced to life imprisonment, we would not notice these last assignments. However, out of a spirit of caution we will dispose of all issues. We shall first deal with those raised by the accused and then discuss the question certified by The Judge Advocate General.

## III

The board of review, with power to weigh the evidence, judge the credibility of the witnesses, ■■■■■■ ■ and determine controverted questions of fact, held that the facts and circumstances shown by this record were sufficient to support a finding that accused was guilty of

unpremeditated murder. One member concluded that the evidence was ample to support the verdict as rendered. Accused now contends that the board of review erred in so holding.

Although the record is somewhat confusing due to language and interpretation difficulties encountered with some of the Korean witnesses, we believe it sufficient to establish the offense of unpremeditated murder and to identify the accused as the perpetrator. All the testimony and evidence, including the pretrial statement of the accused, place him at the scene of the crime at the approximate time it occurred. His admitted purpose in going to the Korean's home was to obtain a woman and he and his companions entered the premises without invitation from its occupants. They abused the occupants of the home. Accused was armed with a carbine and a fifteen-year-old Korean boy identified him as the person whom he had observed arguing threateningly with the deceased a few moments prior to the time the shot was fired. Prior to his death, the victim stated that the colored soldier had shot him, and the accused is colored. There was only one round fired and the victim had been struck but once. The shell casing found at the scene of the crime the following morning was fired by the carbine taken from the accused. A Korean doctor testified as to the cause of death, stating that the victim had died from the gunshot wound. There is not one iota of evidence suggesting the killing was done for justifiable reasons or under excusable circumstances. The foregoing short resumé of facts shows clearly every element of the offense of unpremeditated murder. The missing link, if any, in the chain of circumstances would be the identity of the offender and this is amply furnished by the chain of circumstances pointing unerringly to the accused. Accordingly, the second assignment of error is overruled.

### IV

Accused next advances the contention that certain alleged derelictions of defense counsel and their failure to conduct his defense properly constituted a denial of due process of law. It is not unusual for losing litigants to lay the blame for their conviction on the doorstep of those who represent them and this case varies little from the usual pattern. The charges are sweeping, but there is no evidence to sustain them. At most they are assertions in the brief on appeal, unsupported by any appropriate and relevant facts. We have previously disposed of similar contentions in United States v. Hunter (No. 359), 6 CMR 37, decided October 17, 1952. We there held that where the record shows that accused has been provided with qualified defense counsel pursuant to the provisions of Article 27(b), Uniform Code of Military Justice, 50 USC § 591, in order to support a contention that his rights were not properly and adequately protected, he must "reasonably show that the proceedings by which he was convicted were so erroneous as to constitute a ridiculous and empty gesture, or were so tainted with negligence or wrongful motives on the part of his counsel as to manifest a complete absence of judicial character. See Diggs v. Welch, 148 F 2d 667 (C.A.D.C. Cir.)."

We realize that the record does not reflect the number or extent of consultations between accused and his lawyers but it does show he was provided with a properly appointed and duly qualified counsel who was present at all times during the proceedings. Defense counsel was a member of the Judge Advocate General's Corps and had been certified in accordance with the provisions of Article 27(b), Uniform Code of Military Justice, supra. While accused was not furnished a second member of The Judge Advocate General's Corps there was a regularly appointed assistant defense counsel who was an officer in the Transportation Corps. On this appeal it is alleged principally that counsel's failure to consult with accused on more than one occasion prior to the trial, by his stipulation to the testimony of the ballistics expert, by his failure to call witnesses to corroborate accused's defense, by inept trial technique, and by improper questioning, accused was denied the effective representation guaranteed him by the Code,

supra. We have examined the record in the light of these assertions and, while the case was tried shortly after the new Code went into effect, defense counsel participated intelligently; followed a strategy of establishing a defense of an alibi; produced character evidence, beneficial to the accused; exploited the inconsistencies in testimony of witnesses for the Government; and produced evidence that the accused did not fire his weapon. It may well be that, viewing the trial tactics in retrospect, the testimony of the ballistics expert should not have been the subject of a stipulation. On the other hand, it may have been beneficial to the defense to escape the effect of detailed evidence on this subject. Such matters as these involve the exercise of judgment based on matters not reflected in the record. We cannot condemn counsel merely because they lost nor because they might not have adopted what may, at this level, appear to have been a better strategic approach. Neither can we criticize them without a factual basis to support our comments. The most we can command is that they well and truly, and within their capabilities represent the accused. In view of the record and in light of the standards announced in previous holdings of this Court, we are unable to discern any basis for the conclusion that accused did not receive a fair trial. Accordingly, this assignment of error is overruled.

### V

Appellate defense counsel has also advanced several assignments of error based upon alleged deficiencies in the instructions given by the law officer. Specifically, contentions are made that instructions should have been given on lesser included offenses; that technical words should have been defined; and that the defense theory that accused had an alibi based on a time differential should have been made the subject of an instruction.

The last two contentions may be disposed of summarily. The words used in the instructions are of common usage and did not require a definition.

The instructions were given in the wording of the Manual and if accused desired any further explanation or definition, a specific request should have been made.

As to the contention that an instruction should have been given on the alibi defense raised by the accused, we are of the opinion that it should have been the subject of a request by defense counsel and that in the absence of a request there is no duty on the law officer to instruct specifically on that defense. In this instance, the alibi consisted largely of discrepancies in testimony of witnesses as to the precise time of the shooting. Assuming some witnesses for the Government testified with exactness as to the time the shooting occurred and that some evidence favorable to accused had the same accuracy, there would be a conflict in the evidence as to his presence at the scene of the crime. Obviously, if the shooting occurred at precisely 8:30 p.m. accused could not have been present at the scene and observed in his company area some 350 yards away at the same time. A short answer to that contention is that all witnesses fail to fix the times with accuracy. Moreover, the court was instructed that it had to find on that issue as it had to find the accused was present at the scene of the crime to find the element that he killed the victim by shooting him with a carbine.

We turn now to the failure of the law officer to instruct on the lesser included offenses. He gave the instruction on premeditated murder, the offense charged, by using the language found in paragraph 179a, at page 232, Manual for Courts-Martial, U. S. Army, 1949, which sets out the elements of proof for that offense. In addition, he informed the court-martial that among the lesser included offenses which they might find included within the charge of murder were voluntary and involuntary manslaughter, attempt to commit murder, and certain forms of assault. The record in the present case does not raise reasonably an issue as to any of these offenses. The only lesser included offense which, because of the holding of

the board of review, we will assume might reasonably have been supported by the evidence was that of unpremeditated murder. Concededly, the law officer gave no instructions on the elements of that crime but the elements of the two different degrees of murder, under the facts of this case, are identical except the lesser degree does not include the element of premeditation. In some cases the charge as given would require a reversal by this Court but because of the action of the board of review such is not necessary in this case. Under the instructions on premeditated murder, the court-martial was required to find, beyond a reasonable doubt, every element of unpremeditated murder plus the one additional element of premeditation. The board of review, after carefully analyzing the evidence and measuring it by the appropriate standards for the particular offense, reduced the findings to unpremeditated murder only because they believed the record did not establish premeditation beyond a reasonable doubt. Thus the board only approved so much of the finding as it believed justified by the record which it is commanded to do by the Uniform Code of Military Justice, supra. It necessarily follows that evidence to support every element of unpremeditated murder was found present by both the court-martial and the board of review. Hence, the law officer's error, if error it be, was cured by the board's action.

## VI

The principle issue raised in this cause is found in the question certified by The Judge Advocate General. It is as follows: "Is the action of the board of review with respect to the sentence of death correct in law within the purview of the Uniform Code of Military Justice, Article 66c?"

The applicable portion of Article of War 92, supra, which was in effect at the time this offense was committed, provides:

"Any person subject to military law found guilty of murder shall suffer death or imprisonment for life, as a court-martial may direct; but if found guilty of murder not premeditated, he shall be punished as a court-martial may direct, . . . ."

Under the provisions of the foregoing Article of War, the death sentence could only be imposed if the court-martial returned a finding of premeditated murder and it could only be affirmed by the board of review if the finding of guilty was affirmed. The finding of premeditated murder and sentence of death are so inextricably tied together that when one falls, the other does likewise. Here the sentence of death as originally imposed by the court-martial could not stand because a finding of the lesser offense only was affirmed. To prevent what would be the affirmance of an illegal sentence, the board concluded to affirm only so much of the sentence as provided for confinement for life and a dishonorable discharge. That portion of the sentence involving the punitive discharge may be disposed with little discussion. The Manual for Courts-Martial, United States, 1951, specifically provides in paragraph 126, at page 206, as follows:

". . . . A dishonorable discharge is by implication included in a death sentence. When life imprisonment is adjudged, the court shall also adjudge dishonorable discharge and total forfeitures."

A dishonorable discharge being necessarily included within the death sentence that much of the original sentence could be affirmed by the board of review without in any way changing the form or increasing the severity of the sentence.

Whether the board of review's action in affirming a sentence of confinement for life amounted to commutation and as such exceeded its authority poses the last issue. Appellate defense counsel contend that such is the legal effect of the board's holding and that it is an illegal act since that agency has been granted no commuting powers, such authority having been delegated exclusively to The President and Secretaries of the Departments by Article 71 (a) and (b), Uniform Code of Military Justice, 50 USC § 658, and paragraph 105 of the Manual for Courts-Martial,

United States, 1951. On the other hand, appellate Government counsel urge that the action taken by the board was, as a practical matter, mitigation except as a pure question of semantics and was, therefore, within the power granted to the board of review. A short reference to two authorities will show support for a portion of defense counsel's assertion.

"Mitigation" is defined in Black's Law Dictionary, 4th Edition, as:

"Alleviation; abatement or diminution of a penalty or punishment imposed by law.

"Reduction, diminishing, or lessening amount of penalty or punishment. . . ."

"Commutation" is defined by the same volume as:

"Alteration; change; substitution; the act of substituting one thing for another. . . ."

The difference between mitigation and commutation as applied to military sentences is described by Colonel Winthrop on page 471 of his Military Law and Precedents, 2d ed., 1920 Reprint, as follows:

". . . . Commutation is distinguished from *mitigation,* which, as will hereafter be noticed, is a reduction of a punishment in degree or quantity only; the power to mitigate not authorizing the changing of the species of the penalty adjudged. But there are certain punishments not susceptible of being reduced in degree; consequently where one of these is imposed by the court, and the same is deemed too severe a penalty to be inflicted upon the accused, who yet, it is considered, deserves some measure of punishment, the mere power of mitigation is inadequate for the occasion, and *commutation,* or the substitution of a lesser penalty of a different nature, must be resorted to. Death and dismissal, for example, are punishments not admitting of lesser degrees or capable of being mitigated; they must therefore, when deemed too rigorous, be exchanged or *commuted* for distinct penalties of minor severity."

We are forced to conclude that the sentence was commutation but that alone does not control the holding on this issue. There is in addition the question of whether Congress, expressly or by implication, granted to boards of review the right to commute in death sentence cases. In addition to Article of War 92 previously quoted, there are two Articles of the Uniform Code of Military Justice which shed light on this proposition. Article 59 (b) of the Code, 50 USC § 646, provides:

"Any reviewing authority with the power to approve or affirm a finding of guilty may approve or affirm, instead, so much of the finding as includes a lesser included offense."

Article 66 (c), 50 USC § 653, grants the following additional powers to boards of review:

"In a case referred to it, the board of review shall act only with respect to the findings and sentence as approved by the convening authority. It shall affirm only such findings of guilty, and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved. In considering the record it shall have authority to weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses."

Clearly, the board of review was acting within the authority of Article 59 (b) when it approved a finding of guilty of unpremeditated murder, a lesser included offense of that found by the court-martial. If it had that power then by Article 66 (c), it could approve only such sentence or part thereof as was correct in law. The reduced finding rendered the sentence as originally imposed illegal so unless the board had the power to change the sentence to confinement it had no alternative other than to grant a new trial. Going one step further, if it must grant a new trial then Congress intended to restrict Article 59 (b) in a manner neither expressed nor implied.

304

It is a cardinal rule of statutory construction that we should in construing the Code, if reasonably possible, so interpret it as to give force and effect to each separate and distinct provision. If we were to hold that the board of review had not the power and authority to do as it did in this case, then the provisions of Article 59 (b) of the Code would be rendered meaningless when a death penalty was imposed by a court-martial. To avoid this, we seek to find if the various sections can be construed reasonably so as to bring about what we believe was the Congressional intent, namely, to permit boards of review to approve any lesser included offense than the one found by the court-martial, if sustained by the evidence, regardless of the nature or severity of the crime.

We have little doubt about the power of Congress to delegate to boards of review the right to commute sentences so long as the affirmed punishment did not exceed in severity the imposed penalty. Particularly would this be true when fact-finding bodies make determinations which render the imposed penalty illegal. Stated concretely, Congress could have expressly authorized boards of review to affirm a sentence of confinement in lieu of a death penalty. One could hardly reason that the former is not a lesser sentence although necessarily a different kind. While not so stated in precise language, the authority to do so is found in the quoted provisions of the Code. There is no Congressional command that boards of review do not have the authority. The most that can be said in that respect is that the Act is silent. Therefore, each specific clause can be given effect without directly contravening any other provision of the Code. If we consider, compare, and fit the quoted provisions into a pattern, we must conclude that Congress intended to authorize boards of review to affirm findings of guilty of lesser included offenses and that if by so finding the sentence imposed becomes illegal, to permit the board to substitute a lesser legal sentence. Conceding this permits boards of review to commute in the field of murder, it is what we believe Congress intended to accomplish when it authorized boards of review to evaluate facts, reduce findings, and adjust sentences to fit the offenses affirmed.

We might further test this construction of the act by the principle that a statute should not be construed to bring about undesirable or ridiculous results. Were we to interpret the act to deny the disputed authority to boards of review, we would destroy their power to reduce a finding of guilty to one of a lesser included offense in the particular area where it should operate unrestrained. A board of review should explore carefully the possibility of reducing a capital offense, if the evidence does not establish all elements beyond a reasonable doubt; but, if it is to be circumscribed to such an extent that it has only one alternative, if it so finds, and that is to grant a rehearing, then one of the beneficent provisions of the Code is unduly burdened. Rehearings pose difficult problems of administration and there is likely to be a more restricted policy adopted by boards if they are denied part of the power necessary to tailor the sentence to fit the offense. Moreover, in those cases where benevolence is most needed, we cannot conceive that Congress intended to be so inconsistent as to permit boards of review to reduce a finding of guilty of every principal offense to a conviction of a lesser included offense except in those cases involving death sentences and at the same time grant the power in that field but render it ineffective by making it impossible to use.

For the foregoing reasons we conclude that when a board of review finds the evidence sufficient to support only an included offense of premeditated murder, it has the power to commute the sentence to such a period of confinement as may be legal for the offense affirmed. Accordingly, the question certified by The Judge Advocate General of the Army is answered in the affirmative and the decision of the board of review is affirmed.

Chief Judge QUINN and Judge BROSMAN concur.