UNITED STATES, Appellee,

v.

Karl M. MOULTON, Staff Sergeant,
U.S. Air Force, Appellant.

No. 96–1192.
Crim.App. No. 31385.

U.S. Court of Appeals for
the Armed Forces.

Argued April 10, 1997.

Decided Sept. 29, 1997.

Certiorari Denied Feb. 23, 1998.
See 118 S.Ct. 1048.

Sullivan, J., filed dissenting opinion.

For Appellant: *Lyn Marie C. Cusak* (argued); *Gary R. Myers, Lieutenant Colonel Kim L. Sheffield,* and *Major Ormond R. Fodrea* (on brief).

For Appellee: *Captain Libby A. Brown* (argued); *Colonel Theodore J. Fink* and *Major Allen G. Erickson* (on brief); *Major LeEllen Coacher.*

*Opinion of the Court*

EFFRON, Judge:

At a contested general court-martial, the military judge found appellant guilty of indecently assaulting and raping Senior Airman TJ and of willfully damaging a civilian's automobile, in violation of Articles 134, 120, and 109, Uniform Code of Military Justice, 10 USC §§ 934, 920, and 909, respectively. The military judge sentenced him to a dishonorable discharge, confinement for 5 years, total forfeitures, and reduction to the lowest enlisted grade. The convening authority approved these results, and the Court of Criminal Appeals affirmed in an unpublished opinion.

We granted review on appellant's petition to consider the following two issues that relate to the offenses against Senior Airman TJ:

WHETHER APPELLANT WAS DE-
NIED EFFECTIVE ASSISTANCE OF

COUNSEL GUARANTEED BY BOTH THE SIXTH AMENDMENT AND 10 USC § 827.

WHETHER THE MILITARY JUDGE ERRED TO THE PREJUDICE OF APPELLANT BY FAILING TO ADMIT THE ALLEGED VICTIM'S POST-OFFENSE SEXUAL BEHAVIOR.

We find no prejudicial error, and we affirm the decision of the Court of Criminal Appeals.

## I

The incidents at issue on appeal occurred in October 1991. Appellant, a co-worker and social acquaintance of Airman TJ, took her for a ride in his all-terrain vehicle. To show her appreciation, Airman TJ cooked dinner for appellant at her condominium. While they were in the kitchen, appellant sexually accosted Airman TJ. When she resisted, appellant dragged her into the bedroom, where he raped her. After appellant departed, Airman TJ telephoned her mother to arrange a visit with her, but she said nothing about the rape. Her mother recalled that Airman TJ had complained that a man "in the office where she worked" had assaulted her in the kitchen while fixing dinner after "bike riding."

Otherwise, Airman TJ told no one about the matter until she advised a friend in February 1992, and she did not report the matter to law enforcement officials until she was questioned about an unrelated matter by Air Force officials in August 1993. At that point, she described circumstances that amounted to an indecent assault by appellant. Under further questioning, in March 1994, she stated that appellant had raped her.

At trial, the prosecution anticipated an attack on Airman TJ's credibility in view of her delayed report and her apparent reluctance to provide complete details during initial questioning. On direct examination of Airman TJ, trial counsel sought to explain these circumstances by demonstrating the traumatic effect of the incident on her. When asked by trial counsel if "this event affected your life," Airman TJ replied: "I don't go out. I

do not date military after this incident. I don't want military people around me."

On cross-examination, defense counsel sought to impeach Airman TJ's testimony by asking if she had "dated" a Major M. Trial counsel objected on the ground that the question implicitly inquired into "specific incidents of the sexual conduct of the witness," which generally is prohibited under Mil. R.Evid. 412, Manual for Courts–Martial, United States (1995 ed.). The military judge viewed the question—which sought to impeach by contradiction the testimony of the witness on direct examination—as an appropriate inquiry under the exceptions to the general prohibition in Mil.R.Evid. 412.

In response to the question, TJ denied that she had dated Major M. Defense counsel then asked, "Isn't it true that you slept with him [Major M] on the first or second date?" Before the witness could respond, the military judge directed defense counsel to limit his questions to matters of dating. As the Court of Criminal Appeals observed: "Defense counsel did not complain [about this restriction], otherwise ask the judge to reconsider his ruling, make a proffer of evidence, or even pursue the line of questioning." Unpub. op. at 3.

## II

■ The Court of Criminal Appeals noted that defense counsel has the burden of demonstrating why the general prohibition in Mil.R.Evid. 412 should be lifted to admit evidence of the sexual behavior of the victim and that, in this case, the defense counsel failed to demonstrate the specific evidence that he would introduce or to articulate a theory of admissibility. In that context, the court held that the military judge did not abuse his discretion in precluding further questioning along this line.

We agree under these circumstances. We note, however, that a different result might well have obtained if defense counsel had pursued the matter at trial. The prosecution opened the door to this area of inquiry by raising the issue of the victim's relationships with other men. Implicit in the opinion of the court below is recognition that the defense might have articulated a theory of admissibility under one of the ex-

ceptions in Mil.R.Evid. 412. It is possible that defense counsel might have developed a plausible theory of admissibility based upon impeachment by contradiction, if supported by proffered evidence of expected testimony relevant to that theory. Defense counsel, however, did not make a proffer of any testimony proving the existence of a sexual relationship that would have provided significant evidence on an issue of major importance to the case—the credibility of the witness' explanation for the belated timing of her report of the incident.

■ In addition to challenging the ruling of the military judge on this issue, appellant now attacks his defense counsel as ineffective because "[t]here were individuals available to testify about [TJ's] dating habits and the Major, albeit a Fifth Amendment candidate, was also available to testify at a hearing or in rebuttal. None was ever called. This was both ineffective and prejudicial." Final Brief at 8–9.

The Supreme Court has made it clear that a defendant who seeks to relitigate a trial by claiming ineffective assistance of counsel must surmount a very high hurdle. In *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984) (citation omitted), the Court observed:

Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission was unreasonable.... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

■ *Strickland* established a two-part test that has been applied by this Court for consideration of ineffective-assistance claims in the military justice system. *United States v. Scott,* 24 MJ 186 (CMA 1987). Appellant must demonstrate: (1) a deficiency in counsel's performance that is "so serious that

counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) that the "deficient performance prejudiced the defense ... [through] errors ... so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland, supra* at 687, 104 S.Ct. at 2064.

Appellant has not surmounted the hurdle established by *Strickland* and its progeny with respect to affirmatively demonstrating counsel's deficiency. Although appellant asserts that "[t]here were individuals available to testify about [TJ's] dating habits and the Major ... was also available to testify at a hearing or in rebuttal," appellant has not met his burden of production under *Strickland.* He has failed to bring to the attention of this Court specific information—such as the substance of expected testimony from Major M—that would support the claim of ineffective assistance. If these individuals exist, it is the responsibility of the defense to identify them and to advise this Court precisely what they would have said. *See* Mil.R.Evid. 103(a).

There may well be cases, particularly where the substance of proposed testimony is not at issue and the case involves the strategic choices of counsel, that overcome the presumption of competence. *United States v. Lewis,* 42 MJ 1, 6 (1995). In such instances, it may be necessary for an appellate court to order "affidavits, interrogatories, or a fact-finding hearing." *Id.* This is not such a case, because appellant has not even established a foundation for his claim by demonstrating that specific individuals would have provided the court with specific testimony. If the individuals are members of the armed forces, as appellant has suggested, he should have been able to obtain their statements for purposes of this appeal. If such efforts were unavailing, appellant could have requested military or judicial assistance in locating the individuals and obtaining statements. In the absence of such information or some explanation as to why it could not be obtained, it would be inappropriate under *Strickland* for this Court to presume counsel's ineffectiveness for failing to call witnesses.

As this Court noted in an early opinion, *United States v. Bigger,* 2 USCMA 297, 301,

8 CMR 97, 101 (1953), which was quoted in the instant case by the Court of Criminal Appeals:

> It is not unusual for losing litigants to lay the blame for their conviction on the doorstep of those who represent them.... The charges are sweeping, but there is no evidence to sustain them. At most they are assertions in the brief on appeal, unsupported by any appropriate and relevant facts.

Unpub. op. at 6. Those concerns are no less important today under the tests established by *Strickland.* In most ineffectiveness cases, an accused is in the best position to identify relevant information and present it to the appellate court. When factual information is central to an ineffectiveness claim, it is the responsibility of the defense to make every feasible effort to obtain that information and bring it to the attention of the appellate court.

### III

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

Chief Judge COX and Judges CRAWFORD and GIERKE concur.

SULLIVAN, Judge (dissenting):

I agree with the court below that defense counsel's failure to proffer a reason for questioning the alleged victim about her post-offense sexual relationship with Major M supports the military judge's ruling cutting off the questioning of this witness. *See generally United States v. Williams,* 37 MJ 352 (CMA 1993). However, this conduct and defense counsel's additional failure to call Major M to rebut the alleged victim's testimony on her post-offense trauma is inexplicable. *See United States v. Shaffer,* 46 MJ 94, 100 (1997) (Sullivan, J., dissenting); *United States v. McCastle,* 43 MJ 438, 440 (1996) (Sullivan, J., dissenting).

I would remand this case to the Court of Criminal Appeals and require the defense counsel to file an affidavit explaining this apparent deficiency in not calling Major M. With this as a factual basis, then the court below could properly make an informed decision on the ineffective-assistance-of-counsel issue granted by our Court.