# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

### v.

## Staff Sergeant ANDREW F. PIETTE
## United States Air Force

## ACM 38101 (recon)

## 06 August 2014

Sentence adjudged 19 January 2012 by GCM convened at Dyess Air Force Base, Texas. Military Judge: J. Wesley Moore.

Approved Sentence: Dishonorable discharge, confinement for 5 years, forfeiture of all pay and allowances, and reduction to E-1.

Appellate Counsel for the Appellant: Major Zaven T. Saroyan.

Appellate Counsel for the United States: Colonel Don M. Christensen; Lieutenant Colonel C. Taylor Smith; Major Brian C. Mason; Captain Matthew J. Neil; Captain Richard J. Schrider; and Gerald R. Bruce, Esquire.

Before

ALLRED, HARNEY, and MITCHELL
Appellate Military Judges

OPINION OF THE COURT
UPON RECONSIDERATION

This opinion is subject to editorial correction before final release.

PER CURIAM:

A military judge sitting as a general court-martial convicted the appellant, consistent with his pleas, of two specifications of aggravated sexual contact with a child who had not attained the age of 12 years, in violation of Article 120, UCMJ, 10 U.S.C. § 920.[1] A panel of officer members sentenced the appellant to a dishonorable discharge, confinement for 12 years, forfeiture of all pay and allowances, and reduction

---

[1] On the Government's motion, the military judge dismissed without prejudice a third specification of indecent conduct with a child, alleged as a violation of Article 120, UCMJ, 10 U.S.C. § 920.

to E-1.  Consistent with the terms of a pretrial agreement (PTA), the convening authority approved the findings, 5 years of confinement, and the remaining sentence as adjudged.

*Procedural History*

On 25 June 2013, the Secretary of Defense, "[p]ursuant to [his] authority under title 5, United States Code, section 3101 *et seq.*," issued a memorandum that "appoint[ed] Mr. Laurence M. Soybel, a civilian employee of the Department of the Air Force, to serve as appellate military judge on the Air Force Court of Criminal Appeals." Memorandum from Sec'y of Def. Chuck Hagel for Sec'y of the Air Force Eric Fanning, (25 June 2013).

When the appellant's case was originally before us, he asserted that he received ineffective assistance of counsel during the sentencing portion of his court-martial.

On 14 August 2013, we issued a decision denying the appellant relief. *United States v. Piette*, ACM 38101 (A.F. Ct. Crim. App. 14 August 2013) (unpub. op.). Pursuant to his appointment by the Secretary of Defense, Mr. Soybel was a member of that panel.  The appellant moved this Court to vacate the decision on the basis of Mr. Soybel's participation and petitioned our superior court for a grant of review.  On 31 October 2013, our superior court dismissed the appellant's petition without prejudice and converted the appellant's motion to vacate, pending before our Court, into a motion for reconsideration.  *United States v. Piette*, 73 M.J. 91 (C.A.A.F. 2013) (mem.).  On 15 April 2014, our superior court issued its decision in *United States v. Janssen*, 73 M.J. 221, 225 (C.A.A.F. 2014), holding that the Secretary of Defense did not have the legislative authority to appoint appellate military judges and that his appointment of Mr. Soybel to this Court was "invalid and of no effect."

In light of *Janssen*, we granted the motion for reconsideration on 29 April 2014 and permitted the appellant to file a supplemental assignment of errors.  The appellant submitted a supplemental assignment of errors asserting he is entitled to relief due to excessive post-trial processing delays.  With a properly constituted panel, we have reviewed the appellant's case, to include the appellant's previous and current filings and the previous opinion issued by this Court.  Finding no error that materially prejudices a substantial right of the appellant, we affirm.

*Factual Background*

The victim is the appellant's cousin.  At the time of the offense and at trial, she was 10 years old.  JA lived in Minnesota with her mother and two brothers.  The family often spent weekends camping with relatives.  The appellant spent the month of July 2011 on leave visiting family in Minnesota, after returning from an overseas deployment. He spent some of the time with his family at a campground.  During some of those visits

to the campground, the appellant touched the "vulva of [JA] with his hand or finger," and "placed his mouth on the vulva of [JA]." JA eventually told her mother, which led to the appellant's arrest by local authorities and his eventual court-martial.

Prior to trial, the defense filed a motion in limine under Mil. R. Evid. 513 asking the military judge to conduct an in camera review of JA's counseling records. After conducting his review, the military judge released the records under seal to the Government and the defense as part of a protective order.

During sentencing, the Government called JA, her mother, her father, her oldest brother, and an expert witness to testify about the impact of the appellant's actions on JA and the family. JA's mother testified that JA became a "completely different child" after the assault. She stated that JA had lost her sense of security, had "no desire to do anything," did not want to compete in sports any longer, did not want to go to school or play with her friends, and had anxiety attacks. She also stated that JA had constant intestinal troubles. JA's father and brother testified substantially the same as her mother. Trial defense counsel did not cross-examine JA's mother or brother, but did cross-examine her father about the fact that JA was going to testify and how he thought that was "best for her."

On direct examination, JA recounted how the appellant assaulted her and related that the incidents confused and scared her. She stated that she was afraid of the appellant, no longer trusted him, and did not like to be alone with "an adult [she has not] really known before." But JA also stated that she had not stopped doing anything she used to do and answered affirmatively when asked if she still played softball. On cross-examination, trial defense counsel explored JA's interests with her. JA testified that she still liked softball and planned to play again when the weather warmed up. She stated that she was good at karate, but no longer found it challenging. JA stated she still had her friends, was getting "A" grades in school, and liked her teachers. She also stated that she had been seeing a therapist and that she liked counseling because it helped her to talk about things.

The Government called Dr. Veronique Valliere as an expert witness in sexual assault trauma. Dr. Valliere testified that she reviewed JA's mental health records, the police reports, and the case file. She also interviewed JA and her mother. Dr. Valliere stated that her greatest concerns for JA were the reappearance of her anxiety and associated behaviors. She noted that JA had fears for her own safety and that people would be "mad" at her. The defense cross-examined Dr. Valliere but did not delve into JA's mental health records.

In his oral unsworn statement, the appellant took responsibility for his actions and revealed that he had been abused by his cousin when he was a young boy:

My cousin [J] sexually abused me for years, from about the age of 5, as best as I can figure, until I was about 11. I was not strong enough to tell anyone about it. [J] got caught when I was about 14 for abusing his younger brother. When I learned that my cousin had been arrested for abusing his younger brother, I felt the blame because I thought I could have prevented it if I would have just said something.[2]

*Ineffective Assistance of Counsel*

The appellant argues that he received ineffective assistance of counsel during the sentencing portion of his court-martial because his defense counsel failed to cross-examine the Government's witnesses about the victim's mental health records. We disagree. We also conclude that a fact-finding hearing is not necessary for us to resolve this issue. *See United States v. Ginn*, 47 M.J. 236, 244-45 (C.A.A.F. 1997).

This Court reviews claims of ineffective assistance of counsel de novo. *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009). When reviewing such claims, we follow the two-part test outlined by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *See United States v. Tippit*, 65 M.J. 69, 76 (C.A.A.F. 2007). Our superior court has applied this standard to military courts-martial, noting that "[i]n order to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361 (C.A.A.F. 2010) (citing *Strickland*, 466 U.S. at 687; *Mazza*, 67 M.J. at 474).

The deficiency prong requires the appellant to show his counsel's performance fell below an objective standard of reasonableness, according to the prevailing standards of the profession. *Strickland*, 466 U.S. at 688. The prejudice prong requires the appellant to show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In doing so, the appellant "must surmount a very high hurdle." *United States v. Moulton*, 47 M.J. 227, 229 (C.A.A.F. 1997) (citing *Strickland*, 466 U.S. at 689). This is because counsel are presumed competent in the performance of their representational duties. *United States v. Anderson*, 55 M.J. 198, 201 (C.A.A.F. 2001). Thus, judicial scrutiny of a defense counsel's performance must be "highly deferential and should not be colored by the distorting effects of hindsight." *United States v. Alves*, 53 M.J. 286, 289 (C.A.A.F. 2000) (citing *Moulton*, 47 M.J. at 229). The "defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Moreover, "we need not determine whether any of the alleged errors [in counsel's

---

[2] In his written unsworn statement, the appellant also stated that the Air Force had put him in a facility where he was getting treatment for suicidal depression and where he had "begun to work on the real issues behind it: what [he] did to [JA] and [his] own childhood abuse."

performance] establish[ ] constitutional deficiencies under the first prong of *Strickland* . . . [if] any such errors would not have been prejudicial under the high hurdle established by the second prong of *Strickland*." *United States v. Saintaude*, 61 M.J. 175, 183 (C.A.A.F. 2005).

In assessing the appellant's allegation of ineffective assistance of counsel, we find the appellant failed to establish his counsel were deficient such that their performance fell below an objective standard of reasonableness, according to the prevailing standards of the profession. In affidavits, trial defense counsel state they reviewed JA's mental health records with their court-appointed forensic psychologist to assess, among other areas, the "possible effectiveness of any cross examination [sic] on the topic against all the witnesses that the government intended to call." From their review, the defense concluded that most of "the statements provided by the mother, father, and brother of the alleged victim, were contradicted by the minor's own statements that she still related to male figures or that she was not participating in sports because of reasons unrelated to the assault."

Based on this review of the mental health records with their expert, the defense decided as a matter of strategy to cross-examine JA on the areas they concluded needed to be clarified for the members regarding victim impact. The defense focused the cross-examination on how well JA was doing in school and how she still enjoyed some of her outside activities, including sports. The defense also elicited testimony that explained that while JA may no longer have participated in some things she enjoyed doing prior to the charged offenses, "that was a product of a young girl changing her mind and not a product of the abuse she suffered at the hands of [the appellant]." According to trial defense counsel, "[a]ny decision not to attack [JA's] veracity was made strategically as to avoid alienating or infuriating the members that a young victim was being attacked by counsel." Their main strategy was "to show that she [was] doing ok and still living her life."

The defense strategy on how to cross-examine JA also tied into their approach on extenuation and mitigation. Counsel decided not to "show that [JA] suffered no ill effects from the abuse as [trial defense counsel] thought that would not be beneficial to [the appellant] in providing him the best mitigation and extenuation defense under the circumstances." In his unsworn statement, the appellant talked about the child abuse he experienced at the hands of a family member and the effects it had on him. Thus, defense counsel state that their strategy "could not support minimizing the effects on a nine [sic] year old allegedly victimized by her cousin, when the same effect on the Appellant's victimization by his family member was a matter being presented as mitigation."

Because we find trial defense counsel were not deficient, we need not address the prejudice prong of *Strickland*. Even if we had found their performance deficient, we find that the appellant has failed to show that he suffered any prejudice, that is, a "reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland*, 466 U.S. at 694. The members sentenced the appellant to 12 years of confinement after hearing a 10-year-old JA describe the sexual assaults at the hands of a cousin she used to admire but no longer trusted. The appellant's trial defense counsel secured a PTA prior to trial that capped confinement at 5 years. Thus, the appellant reaped the benefit of his bargain and has failed to convince us that the results of his sentencing hearing would have been different.

*Appellate Review Time Standards*

We review de novo "[w]hether an appellant has been denied [his] due process right to a speedy post-trial review . . . and whether [any] constitutional error is harmless beyond a reasonable doubt." *United States v. Allison*, 63 M.J. 365, 370 (C.A.A.F. 2006) (citations omitted). A presumption of unreasonable delay arises when appellate review is not completed and a decision is not rendered within 18 months of the case being docketed before this Court. *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). The *Moreno* standards continue to apply as a case continues through the appellate process. *United States v. Mackie*, 72 M.J. 135–36 (C.A.A.F. 2013). The *Moreno* standard is not violated when each period of time used for the resolution of legal issues between this Court and our superior court is within the 18-month standard. *Id.* at 136; *United States v. Roach*, 69 M.J. 17, 22 (C.A.A.F. 2010).

This case was originally docketed for appellate review on 21 March 2012 and this Court rendered our initial decision on 14 August 2013, under the 18-month standard established in *Moreno*. As stated supra, our superior court recently decided that one of the judges who participated in that decision was not properly appointed. *See Janssen*, 73 M.J. at 222. Accordingly, we have considered the appellant's court-martial before a properly constituted panel and issue this decision. The time between our superior court's action and this decision has not exceeded 18 months; therefore, the *Moreno* presumption of unreasonable delay is not triggered. *See Mackie*, 72 M.J. at 136.

Additionally, Article 66(c), UCMJ, 10 U.S.C. § 866(c), empowers appellate courts to grant sentence relief for excessive post-trial delay without the showing of actual prejudice required by Article 59(a), UCMJ, 10 U.S.C. § 859(a). *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002); *see also United States v. Harvey*, 64 M.J. 13, 24 (C.A.A.F. 2006). In *United States v. Brown*, 62 M.J. 602, 606–07 (N.M. Ct. Crim. App. 2005), our Navy and Marine Court colleagues identified a "non-exhaustive" list of factors to consider in evaluating whether Article 66(c), UCMJ, relief should be granted for post-trial delay. Among the non-prejudicial factors are the length and reasons for the delay; the length and complexity of the record; the offenses involved; and the evidence of bad faith or gross negligence in the post-trial process. *Id.* at 607. We find there was no bad faith or gross negligence in the post-trial processing. The reason for the delay was to allow this Court and our superior court to fully consider a constitutional issue of first

impression—that is, whether the Secretary of Defense has the authority under the Appointments Clause[3] to appoint civilian employees to the service courts of criminal appeals. We conclude that sentence relief under Article 66, UCMJ, is not warranted.

*Conclusion*

The approved findings and sentence are correct in law and fact and no error materially prejudicial to the substantial rights of the appellant occurred.[4] Articles 59(a) and 66(c), UCMJ. Accordingly, the findings of guilty and the sentence, as approved, are

AFFIRMED.

Senior Judge HARNEY participated in this decision prior to her retirement.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court

---

[3] U.S. CONST. art II § 2, cl 2.

[4] We note the court-martial order (CMO) fails to include Specification 3 of the Charge, which the accused was arraigned upon, and the disposition of that specification. While this clerical error is not prejudicial, we order promulgation of a corrected CMO. *See* Air Force Instruction 51-201, *Administration of Military Justice*, ¶ 10.8.2.2 (6 June 2013) ("List the charges and specifications on which the accused was arraigned. . . . The disposition of each charge and specification should be clear, including those . . . dismissed.")