# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, LEVIN,[1] and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Captain JOHN W. LONIAK**
**United States Army, Appellant**

ARMY 20150835

Headquarters, I Corps
Jeffrey D. Lippert, Military Judge (arraignment)
Sean F. Mangan, Military Judge (trial)
Colonel Randall J. Bagwell, Staff Judge Advocate

For Appellant: Lieutenant Colonel Melissa R. Covolesky, JA; Captain Katherine L. DePaul, JA; Captain Michael A. Gold, JA (on brief); Lieutenant Colonel Christopher D. Carrier, JA; Captain Katherine L. DePaul, JA; Captain Michael A. Gold, JA (Motion to Stay the Proceedings and Motion for R.C.M. 706 Inquiry).

For Appellee:  Colonel Tania M. Martin, JA; Lieutenant Colonel Eric K. Stafford, JA; Major Michael E. Korte, JA; Captain Christopher A. Clausen, JA (on brief).

18 August 2017

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

LEVIN, Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of one specification of attempted wrongful appropriation, three specifications of wrongful appropriation, six specifications of larceny, and one specification of conduct unbecoming an officer and a gentleman, in violation of Articles 80, 121, and 133, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 921, 933 (2012) [hereinafter UCMJ]. The military judge sentenced appellant to be dismissed from the service and to be confined for ten months. Although the plea agreement limited the term of confinement to six months, the convening authority

---

[1] Judge Levin took final action while on active duty.

granted clemency, approving the findings and only so much of the sentence as provided for a dismissal from the service and four months confinement.

Appellant's case is before this court for review under Article 66, UCMJ. Appellate defense counsel raises four errors, all of which merit discussion and one of which the government concedes merits relief. We provide relief in our decretal paragraph. The matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), are without merit.

## BACKGROUND

Over a period of five months, appellant entered numerous Army and Air Force Exchange Service (AAFES) facilities, removed the posted price tags from high-priced items, and substituted tags reflecting lower prices. With respect to the larceny specifications, appellant wrongfully obtained several items of merchandise in a total amount exceeding $10,000.00. Among the items included in his scheme were seven Apple Mac mini computers, an Apple Airport Time Capsule, and a shredder. In the box containing the shredder, appellant hid ten secure digital memory cards. On one occasion, appellant attempted to purchase a camera and two more mini computers, but abandoned his scheme on that particular day when he was questioned by a suspicious cashier.

After making the various purchases, appellant returned several of the items for a full refund, which was provided to him in the form of store credit on AAFES gift cards. Appellant would thereafter purchase Visa gift cards with the AAFES gift cards that he could use in facilities not associated with AAFES. In an effort to avoid detection, appellant engaged in his long-term crime spree at different AAFES facilities on installations throughout California, Nevada, and Washington.

*A. Whether a Subsequent Mental Health Diagnosis Renders the Pleas Improvident.*

Prior to appellant's trial, he underwent a mental health evaluation pursuant to Rule for Courts-Martial [hereinafter R.C.M.] 706. The so-called "sanity board" determined that appellant suffered from post-traumatic stress disorder, disordered social connectedness, and maladaptive gambling behaviors. Significantly, the board concluded that appellant did not suffer from a severe mental defect at the time of his crimes and he was able to appreciate fully the nature, quality, and wrongfulness of his conduct.

After the convening authority took action on his case, and after his release from confinement, appellant obtained treatment from two mental health professionals, one of whom diagnosed appellant with post-traumatic stress disorder and schizoaffective disorder, bipolar type. Neither of the two practitioners

2

concluded that appellant was unable to appreciate fully the nature, quality, and wrongfulness of his conduct.[2]

Rather than raise the issue of a new trial in light of newly-discovered evidence, which is precluded under the procedural rules, appellant contends his pleas were improvident as a result of his subsequent mental health diagnosis. *See* R.C.M. 1210(a) ("A petition for a new trial of the facts may not be submitted on the basis of newly discovered evidence when the petitioner was found guilty of the relevant offense pursuant to a guilty plea."). To that end, appellant submitted various materials for our review that were not presented to the military judge. There is nothing that permits this court to consider these materials in the context of an appeal of a guilty plea. Nevertheless, even considering these materials, for the reasons stated below, we disagree with appellant's contention.

A military judge's acceptance of a guilty plea is reviewed for an abuse of discretion. *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008). A guilty plea will be rejected only where the record of trial shows a substantial basis in law or fact for questioning the plea. *United States v. Hardeman*, 59 M.J. 389, 391 (C.A.A.F. 2004); *United States v. Jordan*, 57 M.J. 236, 238 (C.A.A.F. 2002); *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991). We review de novo the military judge's legal conclusion that appellant's pleas were provident. *Inabinette*, 66 M.J. at 322. A plea of guilty waives a number of important constitutional rights. *United States v. Care*, 18 C.M.A 535, 541-42, 40 C.M.R. 247 (1969). As a result, the waiver of these rights must be an informed one. *United States v. Hansen*, 59 M.J. 410, 412-13 (C.A.A.F. 2004).

During the providence inquiry, the military judge and appellant engaged in the following colloquy:

> MJ: I note that Appellate Exhibit I references a result of a 706 inquiry that was conducted in this case. In addition[,] I would just like to discuss with you and your counsel, briefly, the concept of mental responsibility just so it's clear on the record, okay, Captain?
>
> ACC: Yes, sir:
>
> MJ: Based on the information contained in the 706 request and the fact that there was a 706 request raises the

---

[2] Lack of mental responsibility can be a valid defense in only one situation, when: "at the time of the commission of the acts constituting the offense, the accused, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his or her acts." R.C.M. 916(k)(1).

discussion of whether or not the defense of lack of mental responsibility exists in this case. By that I mean whether there is a defense that you would be potentially able to raise against these crimes based on whether you were not mentally responsible due to a severe mental disease or defect.

The military judge then proceeded to explain the term "severe mental disease or defect" and asked appellant if he understood the term. Appellant indicated that he did, after which time the colloquy continued as follows:

> MJ: If at the time of the offense you are not suffering from a mental disease or defect, then there is no defense of mental responsibility. Do you understand that?
>
> ACC: Roger, sir.
>
> MJ: If at the time of the offense you were suffering from a mental disease or defect, then I must inquire whether as a result of that severe mental disease or defect you were unable to appreciate the nature and quality of the wrongfulness of your conduct. Do you understand that?
>
> ACC: Yes, sir.
>
> MJ: Have you discussed this with your attorney?
>
> ACC: Yes[,] I have, sir.
>
> MJ: Defense [c]ounsel, do you believe that there is a defense of mental responsibility at the time of the offense in this case?
>
> DC: Sir, I do not. I have been detailed to this case since 12 May of 2015. I have met with [appellant] numerous times over the course of my representation of him. Consulted with two different civilian attorneys and a number of other investigative sources in this case, sir, and I am confident based on the investigation that, while there may be mental health mitigation factors, those factors do not rise to the level of a defense.
>
> MJ: [Appellant], do you . . . understand what I've basically asked your counsel here. From his perspective,

> having discussed the topic with you, and to sort of
> document that, do you agree with your counsel?
>
> ACC:  I do, sir.

At the conclusion of appellant's providence inquiry, and after appellant again indicated that he still wished to plead guilty, the military judge stated:

> I find that your plea of guilty is made voluntarily, and
> with full knowledge of its meaning and affect.  I further
> find that you have knowingly, intelligently, and
> consciously waived your rights against self-incrimination,
> to a trial of the facts by a court-martial and to be
> confronted by the witnesses against you.  Further, there is
> no defense applicable to the offenses based on your
> statements and the evidence presented.  Accordingly,
> your plea of guilty is provident and I do accept it . . . .

In support of his position that his pleas were improvident, appellant relies on *United States v. Harris*, 61 M.J. 391, 398 (C.A.A.F. 2005) (setting aside an accused's guilty pleas due to the military judge's findings that the accused suffered from a severe mental disease or defect).  There are at least two significant facts that easily distinguish this case from *Harris*.  First, in *Harris*, the military judge failed to inquire whether the accused understood that he had the defense of lack of mental responsibility available to him.  Second, in *Harris*, there was some evidence that the accused could not appreciate the nature and quality and wrongfulness of his conduct. That is simply not the case here.

In this case, the military judge raised the issue of a potential defense of mental responsibility and discussed that issue in some detail with appellant. Appellant, along with his counsel, acknowledged that they were aware of the potential defense and that it did not apply.  Moreover, neither of the two mental health professionals retained by appellant indicated that he was unable to appreciate the wrongfulness of his conduct.  Given that appellant went to some length to avoid detection during his crime spree, this is not surprising.  At most, appellant now has some evidence post-trial that his diagnosis is different than his diagnosis before trial.  This subsequent diagnosis, however, does not "undermine the adequacy of the plea." *Inabinette*, 66 M.J. at 323. *See also United States v. Shaw*, 64 M.J. 460, 462-64 (C.A.A.F. 2007).  Unless the condition is severe enough to cause the appellant to not "appreciate the nature and quality or the wrongfulness of the acts[,]" it "does not otherwise constitute a defense." UCMJ art. 50a(a).  There is no evidence before us that appellant did not appreciate the nature and quality or the wrongfulness of his acts.  Thus, we conclude that the military judge did not abuse his discretion and there is not a substantial basis in law or fact to question appellant's pleas of guilty.

*B. Whether Theft of "Store Credit" Amounts to Larceny.*

In his second assigned error, appellant argues that the specifications alleging larceny failed to state an offense because "store credit" is intangible and cannot be stolen. We review whether a specification states an offense de novo. *United States v. Schloff*, 74 M.J. 312, 313 (C.A.A.F. 2015). Failure to state an offense is a non-waivable ground for dismissal of a charge. R.C.M. 907(b)(1)(B).[3]

To determine if a specification states an offense, we employ a three-prong test in which the specification must: 1) allege the essential elements of the offense, either expressly or by necessary implication; 2) provide notice to the accused of the offense so he can defend against it; and 3) give sufficient facts to protect against double jeopardy. *United States v. Dear*, 40 M.J. 196, 197 (C.M.A. 1994); *United States v. Sell*, 3 U.S.C.M.A. 202, 206, 11 C.M.R. 202, 206 (C.M.A. 1953). There is no question that the specifications for larceny alleged all of the essential elements of larceny. Each specification alleged a specific date range and location. Each specification alleged that appellant stole property with the intent permanently to deprive the owner of its use, that is, store credit, and that the credit was a thing of value.

During his providence inquiry below, appellant acknowledged that store credit was a thing of value as he could use it to purchase other items. On appeal, however, appellant contends that AAFES "store credit" cannot be stolen because it is "intangible" and therefore not capable of being possessed, citing to *United States v. Mervine*, 26 M.J. 482, 483 (C.M.A. 1988). In that case, our superior court held that extinguishing a debt through fraud did not constitute larceny because a debt is not the proper subject of a larceny charge. In reaching its decision, the court noted "[P]ossession cannot be taken of a debt or of the obligation to pay it, as tangible property might be taken possession of" and a debt is "simply not the equivalent of money for purposes of Article 121[, UCMJ]." *Id.* at 483-84 (quotation marks and citation omitted). Appellant's fraudulent acquisition of store credit is not analogous to the fraud perpetrated in *Mervine*.

As stated by our sister court in *United States v. Perrine*:

> The offense of larceny requires the appellant to have
> wrongfully taken or obtained "money, personal property,

---

[3] We note that R.C.M. 907 changed after trial and no longer includes subsection (b)(1)(B). *Compare* R.C.M. 907(b)(1) (2012), *with* R.C.M. 907(b)(1) (2016). We assume, without deciding, that the 2012 version of the rule applies to this appeal. *See United States v. Thomas*, ARMY 20150205, 2016 CCA LEXIS 551, at *4-11 (Army Ct. Crim. App. 9 Sept. 2016) (mem. op.) (discussing changes to R.C.M. 907).

LONIAK–ARMY20150835

> or [an] article of value of any kind," from its owner with
> the requisite intent.  Additionally, "[w]rongfully engaging
> in credit, debit, or electronic transaction to obtain goods
> . . . is usually a larceny of those goods from the merchant
> offering them."

ACM S31972, 2013 CCA LEXIS 234, at *10 (A.F. Ct. Crim. App. 18 Mar. 2013) (internal citations omitted).

In this case, appellant did "take possession" of "tangible property" that had "value."  He walked away from the AAFES customer service counter carrying a gift card that had been credited with the value of the item he had just fraudulently returned to AAFES.  In addition to its literal value as a piece of plastic, that card had a further tangible and actual value—the dollar amount contained on it.  Appellant took that tangible value (which was equivalent to money) and converted it to the goods he received from AAFES by using those gift cards to buy additional items valued at over $500.00.

This court has also addressed whether a gift card has value and could be the subject of a larceny charge in the context of a guilty plea.  In *United States v. Manriquez*, we rejected appellant's claim that a gift card had no tangible value other than the plastic itself.  ARMY 20140893, 2016 CCA LEXIS 347, at *9 (Army Ct. Crim. App. 20 May 2016) (noting that "[a]n activated gift card, like a movie ticket, sports ticket, or lottery ticket, is an object with value").

In this case, appellant pled guilty and acknowledged during his providence inquiry that the gift cards had value in that he "could use [them] to buy other things[.]"  Value is a question of fact, not law.  *Manual for Courts-Martial, United States* (2012 ed.), pt. IV, ¶ 46.c.(1)(g)(i).  As this was a guilty plea, appellant's admissions that the card had value is conclusive.  Thus, appellant's conduct amounted to larceny, and the charge sheet properly stated an offense.

### C.  Whether Larceny and Conduct Unbecoming an Officer and Gentleman are Multiplicious.

Appellant alleges, and the government concedes, that one specification alleging larceny and one specification alleging conduct unbecoming an officer and gentleman are multiplicious.  *See United States v. Frelix-Vann*, 55 M.J. 329 (C.A.A.F. 2001).  We agree.

Claims of multiplicity are reviewed de novo.  *United States v. Anderson*, 68 M.J. 378, 385 (C.A.A.F. 2010) (citing *United States v. Roderick*, 62 M.J. 425, 431 (C.A.A.F. 2006)).  In *United States v. Campbell*, our superior court discussed the distinction between multiplicity, unreasonable multiplication of charges for findings,

7

and unreasonable multiplication of charges for sentencing. 71 M.J. 19, 22 (C.A.A.F. 2012). The court clarified that "there is only one form of multiplicity, that which is aimed at the protection against double jeopardy as determined using the *Blockburger/Teters* analysis." *Id.* at 23 (referring to *Blockburger v. United States*, 284 U.S. 299 (1932), and *United States v. Teters*, 37 M.J. 370 (C.M.A. 1993)). *Blockburger* provides that when "the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger*, 284 U.S. at 304.

In this case, Specification 1 of Charge II charged appellant with the theft of an Apple Mac Mini on divers occasions, between 20 August 2014 and 8 September 2014. The Specification of Charge III charged appellant with conduct unbecoming an officer and a gentleman in that he obtained an Apple Mac Mini on divers occasions, between 20 August 2014 and 8 September 2014, through false pretenses. As the government acknowledges, the only difference in the specifications is the unbecoming nature of the conduct alleged in the Specification of Charge III. Thus, one of the specifications must be dismissed. *See Frelix-Vann*, 55 M.J. at 331 (explaining, under *Teters* analysis, "since only one offense (conduct unbecoming by committing larceny) has a different element than the other (larceny), these offenses were not separate").

Appellant acknowledges that it is the government's prerogative to decide which specification should be dismissed. *United States v. Palagar*, 56 M.J. 294, 296 (C.A.A.F. 2002). The government seeks to dismiss the Specification of Charge III and Charge III, which we do below.

### D. *Whether Failure to Call Certain Witnesses in the Presentencing Phase of the Court-Martial Amounts to Ineffective Assistance of Counsel.*

Although appellant praised his defense team in his unsworn statement, asserting they had done a "champion's job," appellant now complains that his defense counsel were ineffective during the presentencing phase of the court-martial by failing to present testimonial evidence in extenuation and mitigation regarding the following: 1) appellant's mental health and medical conditions; and 2) his previous good duty performance. We disagree.

To prevail on a claim of ineffective assistance of counsel, "an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361-62 (C.A.A.F. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)) (additional citation omitted). "We review ineffective assistance of counsel claims de novo." *Id.* at 362.

8

When assessing *Strickland's* first prong, we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" 466 U.S. at 689. To demonstrate prejudice, "'the [appellant] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Green*, 68 M.J. at 362 (quoting *Strickland*, 466 U.S. at 698). "If we conclude that any error would not have been prejudicial under the second prong of *Strickland*, we need not ascertain the validity of the allegations or grade the quality of counsel's performance under the first prong." *United States v. Saintaude*, 61 M.J. 175, 179-80 (C.A.A.F. 2005) (citing *Strickland*, 466 U.S. at 697).

During the presentencing phase of appellant's court-martial, defense counsel presented a three-page list of thirty-six prescribed medications that had been dispensed to appellant over the years. Appellant contends, however, that he received ineffective assistance of counsel because his defense counsel failed to introduce the medical and mental health history that necessitated those prescriptions. Appellant further claims that his counsel were ineffective by failing to call witnesses who could testify about his accomplishments during his stints in the Navy, Marine Corps, and his enlisted time in the Army.

The record of this guilty plea compellingly demonstrates defense counsel were not ineffective at sentencing. In addition to presenting a memorandum of expected retirement benefits that showed a potential financial loss of $1.6 million to appellant and his family, counsel moved into evidence a comprehensive 27-page Good Soldier Book. This latter exhibit included Officer Evaluation Reports, Noncommissioned Officer Evaluation Reports, along with several training documents. Appellant's wife and a former neighbor also testified, both of whom described the appellant as a supportive parent. Rather than highlight appellant's medical issues and military service through witness testimony, counsel emphasized the financial harm to appellant should he be dismissed from the Army and the impact that harm would have on his family. Still, as discussed *supra*, they did not ignore the mental health issues. Earlier, the military judge had been presented with the findings of the R.C.M. 706 sanity board, which reflected that appellant suffered from post-traumatic stress disorder, disordered social connectedness, and maladaptive gambling behaviors. In his closing argument, defense counsel reminded the judge of the results of that board, urging him to also "consider the medical history, the numerous drugs that [appellant] has been prescribed throughout his time in the Army for a variety of things, . . . from things then related to health issues that have come up out of the Army, sir."

The record of trial convincingly demonstrates that defense counsel had sound and reasonable tactical reasons for the course of action they chose. *See United States v. Perez*, 64 M.J. 239, 243-44 (C.A.A.F. 2006). For instance, had defense

counsel highlighted the mental health issues to any greater extent through witness testimony, government counsel would have likely emphasized the premeditation and care that went into appellant's crimes, such as: 1) their planning and subsequent execution which involved purchasing lower priced items, switching price tags, returning the items for a full refund, and obtaining gift cards; 2) the fact that this course of conduct continued for several months; 3) appellant's concealment of a number of digital memory cards in a box containing a shredder; 4) appellant's decision to leave the store prior to purchasing a camera and two computers when he was questioned by a suspicious employee; and 5) appellant's additional efforts to avoid detection by traveling to different installations in three different states. These deliberate actions, which would have likely been elicited through cross-examination of witnesses, might very well have shifted the focus from appellant's family and financial hardship to his calculating conduct.

We therefore find that appellant has failed to meet his burden of demonstrating that his counsel's conduct was deficient. Even if we were to assume a flawed strategy, appellant has not met his burden to show any prejudice in this case where, among other things, he was facing a dismissal and *nineteen years* of confinement and was sentenced only to a dismissal and *ten months* of incarceration. Furthermore, with the benefit of his counsel's efforts in securing a pretrial agreement and post-trial clemency, only the dismissal and four months of confinement were approved. Appellant has "not surmounted" the "very high hurdle" required to successfully claim ineffective assistance of counsel. *United States v. Moulton*, 47 M.J. 227, 229 (C.A.A.F. 1997).

## CONCLUSION

The findings of guilty of the Specification of Charge III and Charge III are set aside and dismissed. The remaining findings of guilty are AFFIRMED.

We are able to reassess the sentence on the basis of the error noted and do so after conducting a thorough analysis of the totality of circumstances presented by appellant's case and in accordance with the principles articulated by our superior court in *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013), and *United States v. Sales*, 22 M.J. 305, 307-08 (C.M.A. 1986). We are confident that based on the entire record and appellant's course of conduct, the military judge would have imposed a sentence of at least that which was adjudged, and accordingly we AFFIRM the sentence.

We find this reassessed sentence is not only purged of any error but is also appropriate. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings set aside by our decision, are ordered restored.

Senior Judge MULLIGAN and Judge WOLFE concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court