**UNITED STATES**

v.

**Jeffrey S. MERZ, 270–88–5113, Aviation Machinist's Mate Airman Apprentice (E–2), U.S. Navy.**

**NMCM 98 01213.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 15 Jan. 1998.

Decided 22 Jan. 1999.

851

LT Robert Attanasio, JAGC, USNR, Appellate Defense Counsel.

Maj M.K. Jamison, USMC, Appellate Government Counsel.

Before SEFTON, Chief Judge, DORMAN, Senior Judge, and ROLPH, Appellate Military Judge.

DORMAN, Senior Judge:

Appellant stands convicted by special court-martial, consistent with his pleas, of a single specification alleging the wrongful use of marijuana in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a (1994). Officer members sentenced the appellant to confinement for 90 days, forfeiture of $617 pay per month for 3 months, reduction to pay grade E–1, and a bad-conduct discharge. The convening authority approved the sentence as adjudged.

We have carefully reviewed the record of trial, the appellant's four summary assignments of error, and the Government's response. We conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Art. 59(a), UCMJ, 10 U.S.C. § 859(a).

## Sentence Appropriateness

The appellant first contends that his sentence is inappropriately severe. He particularly focuses upon the bad-conduct discharge. In support of his argument, appellant cites his depression attributable to his wife's reassignment to Guam, his diagnosed personality disorder, the testimony of his supervisor that the appellant was an excellent sailor, and finally the appellant's remorse. The appellant apparently believes that because he used marijuana simply as a means to get out of the Navy and be with his wife, his misconduct does not merit the punishment meted out by the members. Appellant's rationalization of his misconduct fails to recognize that "[it] is the intent, not the motive, that determines the criminality of the act." *United States v. Kastner*, 17 M.J. 11, 13 (C.M.A.1983). Furthermore, the wrongful use of drugs is considered a serious breach of military discipline. *See United States v. Bickel*, 30 M.J. 277, 280 (C.M.A.1990); *United States v. Trottier*, 9 M.J. 337, 345–347 (C.M.A.1980).

In this case we are confident that the court-members afforded the appellant individualized consideration based on the "nature and seriousness of the offense and the character of the accused." *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A.1982). This is particularly evident in that the adjudged confinement and forfeiture was only half of that which was authorized. Appellant now asks this court to disapprove a significant portion of the sentence awarded by the military judge and approved by the convening authority. What he seeks now is nothing more than clemency, which is not a function of this court. *United States v. Healy*, 26 M.J. 394, 395–96 (C.M.A.1988). We are convinced that the approved sentence is appropriate for this appellant, based upon his record, his extenuation and mitigation evidence, and his offense.

## Abuse of Discretion

In his second and third assignments of error, the appellant argues that the military judge erred in allowing the trial counsel, over defense objection, to cross-examine a defense witness concerning the basis

for the witness's opinion that the appellant was honest. In summary fashion, appellant argues that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. MILITARY RULE OF EVIDENCE 403, MANUAL FOR COURTS–MARTIAL, UNITED STATES (1998 ed.). The appropriate standard of review for this issue is abuse of discretion, recognizing that a military judge enjoys wide discretion in applying MIL.R.EVID. 403. *United States v. Rust,* 41 M.J. 472, 478 (1995). Furthermore, such determinations by the military judge are ordinarily afforded deference. *United States v. Harris,* 46 M.J. 221, 225 (1997).

During the appellant's case in extenuation and mitigation, the appellant presented the testimony of Chief Boatswain's Mate Long as his sole witness. Chief Long specifically testified that the appellant is "very honest," and that one of the appellant's "greatest qualities . . . is his honesty." Record at 133–34. While evidence of the appellant's honesty was not relevant to the issue of appellant's guilt or innocence, nor did it concern a character trait essential to an element of proof or defense, *see* MIL.R.EVID. 405(b), it arguably was relevant as a matter of the appellant's rehabilitative potential. The defense opened this area of inquiry. During cross-examination the following exchange between the trial counsel and Chief Long occurred:

Q. You also testified that he's an honest person; is that true?

A. Yes, sir.

Q. Are you aware that, upon entrance into the military, he failed to disclose his involvement in a burglary, upon enlistment?

A. No, sir.

Q. Are you aware that he failed to disclose prior drug use upon enlistment?

A. No, sir.

Record at 146. Prior to this exchange an Article 39a session was conducted. During that session the trial defense counsel objected to the trial counsel asking the witness questions concerning past misconduct by the appellant. The expressed basis for the objection was that the question was "irrelevant" and because the "prejudicial effect of all this evidence outweighs the probative value." Record at 137–38. During this Article 39a session the trial counsel established that he had a good faith basis for asking the questions, indicating that administrative remarks in the appellant's Enlisted Performance Record substantiated the appellant's fraudulent enlistment. Record at 144. The military judge sustained the objection in part, limiting the matters into which the trial counsel could delve. The military judge also instructed the trial counsel that he could not introduce extrinsic evidence, and that he would be "stuck with whatever the witness responds." Record 143.

"In order to have proper cross-examination as to [honesty]: (1) there must be good faith belief by the opponent that the conduct occurred; and (2) the conduct must relate to instances of [dishonesty]." *United States v. Robertson,* 39 M.J. 211, 215, *citing Michelson v. United States,* 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948). Where those conditions are met, and where a witness has given opinion and/or reputation evidence, it is permissible, subject to the balancing test of MIL.R.EVID. 403, to question the witness concerning "relevant specific instances of conduct." MIL.R.EVID. 405(a); *United States v. Pruitt,* 46 M.J. 148, 151 (1997); *United States v. White,* 36 M.J. 306, 307 (C.M.A. 1993); *United States v. Pearce,* 27 M.J. 121, 124 (C.M.A.1988).

Under the facts of this case, the trial counsel had a good faith basis to ask the questions he directed to Chief Long. Additionally, the form of the questions, "Are you aware that . . . ," properly elicited information to test the basis of the witness's opinion concerning the appellant's honesty. Under MIL. R.EVID. 405(a) it is permissible on cross-examination of a character witness to inquire into "relevant specific instances of conduct."[1]

---

1. The trial counsel argued that his line of questioning was permitted by MIL.R.EVID 608(b). The military Judge properly concluded that MIL. R.EVID. 608(b) was not applicable to the issue before the court. On appeal the Government argues that the evidence was admissible under Rule for Courts–Martial 1001(b)(5), Manual for Courts–Martial, United States (1998 ed.). That

Unfortunately none of the trial participants focussed on this rule of evidence. Nevertheless, the Military Judge's ruling was consistent with the requirements of that rule, as it also prohibits the introduction of extrinsic evidence to prove the existence of specific acts. Stephen A. Saltzburg, ET AL., Military Rules of Evidence Manual 571 (4th ed.1997). Thus the trial counsel was stuck with the answers given by Chief Long in which he stated that he was not aware of the matters raised by the trial counsel. No evidence was before the court concerning whether the appellant had withheld information concerning pre-service drug usage. Had the appellant not addressed the issue of his pre-service apprehension for burglary in his unsworn statement, no "evidence" would have been before the court on that issue.[2]

We find no abuse of discretion here. The military judge was correct in allowing the trial counsel to test the basis of Chief Long's opinion of the appellant's honesty. Under the facts of this case the prosecution was entitled to ask Chief Long if he was aware of a specific act of the appellant that related to the appellant's honesty. Accordingly, we reject the appellant's second and third assignments of error.

### Authentication of the Record

 In his final assignment of error, the appellant asks this court to return the record of trial to the convening authority for corrective action because it was not properly authenticated. The underlying basis for the assignment of error has merit.

Appellant's court-martial was called to order on 12 December 1997. The presiding military judge was Captain A.A. Reynolds, JAGC, U.S. Navy. During that trial session the appellant was advised of his counsel and forum rights; the court was assembled; and the appellant was arraigned. The appellant reserved his selection of forum and reserved motions and pleas. The trial session lasted 15 minutes and is recorded on the first 12 pages of the record of trial. Appellant's court-martial reconvened on 14 January 1998, with Captain T.L. Leachman, JAGC, U.S. Navy, presiding as the military judge. At that trial session, Captain Leachman re-advised the appellant of his forum rights, and the appellant made his selection. Captain Leachman received the appellant's pleas. No motions were raised prior to the entry of the pleas. Following the conclusion of the trial the record was authenticated by the trial counsel on 26 February 1998.[3] In substance the trial counsel certified that he was authenticating the appellant's record of trial, in the absence of Captain Leachman, due to Captain Leachman being on leave until March 1998. The certificate was signed in accordance with R.C.M. 1104(a)(2)(B).

As the record stands before us, the first 12 pages of the record of trial have not been authenticated. Rule for Courts–Martial 1104(a)(2)(A) provides in part that, "[i]f more than one military judge presided over the proceedings, each military judge shall authenticate the record of the proceedings over

---

provision, however, does not address the factual situation presented by the case at bar. R.C.M. 1001(b) applies to evidence offered by the *prosecution* during presentencing. It does not address the cross-examination of a defense witness.

2. During his unsworn statement the appellant stated that prior to his enlistment he had been charged with "complicity to aggravated burglary," but that the charges were dropped. Record at 154. The appellant never addressed the allegations of preservice drug usage, nor did he indicate whether he had withheld any of the information from his recruiters. Because no evidence was introduced that the appellant had withheld information from his recruiters, it was error for the trail counsel to argue to the members, "Fooled the Chief didn't he? And he would have fooled you and I had there not been evidence that prior to going to enlist in the Navy he

failed to disclose, 'Oh, I was an accomplice to a burglary.' He failed to disclose he used drugs before." Record at 176. The appellant did not object to the argument. Absent plain error, which we do not find here, the error was waived. R.C.M. 1001(g); *see United States v. Kropf*, 39 M.J. 107 (C.M.A.1994); and *United States v. Fisher*, 21 M.J. 327, 328 (C.M.A.1986).

3. Government counsel asserts that the record was authenticated on 20 February 1998. Government Brief at 8. Admittedly, it is difficult to read the handwritten date on the Certificate of Authentication. What the government counsel reads as a "0," we read as a "6." We reach this conclusion after comparing trial counsel's handwritten date of "6 February" on page 202 to his handwritten date on the Certificate of Authentication.

which that military judge presided...." Thus Captain Reynolds should have authenticated pages 1–12 of the record of trial, and Captain Leachman should have authenticated the remainder of the record. Substitute authentication of the record by the trial counsel is authorized by R.C.M. 1104(a)(2)(B) where the military judge is dead, disabled, or absent. If Captain Leachman was absent, as envisioned by the rule, it was proper for the trial counsel to authenticate the remainder of the record. An explanation for that substitute authentication was required to be attached to the record in accordance with R.C.M. 1103(b)(3)(E).

We do not condone the failure to authenticate the first 12 pages of the record of trial. The importance of an accurate record can not be understated. It is the "single essential element to meaningful appellate review." *United States v. Credit,* 4 M.J. 118, 119 (C.M.A.1977). Under the facts of this case, however, the error is harmless. Where the matters addressed in the brief initial session of appellant's court-martial were repeated by Captain Leachman in the next session of the court-martial, and where the appellant has identified no errors in the record, it is not necessary to return this case for proper authentication. "To hold otherwise would be to elevate form over substance and would constitute an unnecessary interference with appellant's interest in receiving a timely review on the merits of his case." *United States v. Robinson,* 24 M.J. 649 (N.M.C.M.R.1987).

■■■ The discussion to R.C.M. 1104(a)(2)(B) states that "[s]ubstitute authentication is authorized only in emergencies. A brief, temporary absence of the military judge from the situs of the preparation of the record of trial does not justify a substitute authentication." R.C.M. 1104(b)(2)(B), Discussion. Unfortunately, the explanation provided by the trial counsel does not provide us with sufficient information to determine whether substitute authentication was appropriate in this case. The trial counsel certainly could have done a better job documenting the projected termination date of Captain Leachman's period of leave. From the record we have before us, Captain Leachman could have been returning just 3 days after the trial counsel authenticated the record. While we believe the trial counsel acted in good faith when he authenticated the record, for purposes of this appeal we conclude that it was error for the trial counsel to do so. Nevertheless, we find the error harmless.

In this case the trial defense counsel was afforded the opportunity to review the record prior to authentication, but he did not do so. The record establishes, however, that the trial defense counsel received a copy of the authenticated record on 31 March 1998. The convening authority did not take action in this case until 18 June 1998. On 20 may 1998, the trial defense counsel submitted a letter of clemency to the convening authority in which he referenced the record of trial. He did not raise any issue relative to the accuracy or the verbatim nature of the transcript of the proceedings. Nor has the appellant identified any transcription error to this court. Absent some allegation of prejudice, or prejudicial impact ascertained by us which support his prayer for a return for further action by the convening authority and trial participants, we shall not order a useless act. Art. 59(a), UCMJ, 10 U.S.C. § 859(a). *See United States v. Galaviz,* 46 M.J. 548 (N.M.Ct.Crim.App.1997); and *United States v. Robinson,* 24 M.J. 649, 654 (N.M.C.M.R. 1987).

Accordingly, we affirm the findings and sentence, as approved on review below.

Chief Judge SEFTON and Judge ROLPH concur.