# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

Before
**J.A. FISCHER, D.C. KING, B.T. PALMER**
Appellate Military Judges

**UNITED STATES OF AMERICA**

v.

**MATTHEW D. HINOJOS
SERGEANT (E-5), U.S. MARINE CORPS**

NMCCA 201400439
SPECIAL COURT-MARTIAL

**Sentence Adjudged:** 3 September 2014.
**Military Judge:** Col D.J. Daugherty, USMC.
**Convening Authority:** Commanding Officer, Headquarters Battalion, 3d Marine Division (-) (REIN), Okinawa, Japan.
**Staff Judge Advocate's Recommendation:** LtCol K.T. Carlisle, USMC.
**For Appellant:** CDR Ricardo Berry, JAGC, USN.
**For Appellee:** LT Amy Freyermuth, JAGC, USN; Lt Ann Dingle, JAGC, USN.

**31 August 2015**

---
**OPINION OF THE COURT**
---

THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.

PER CURIAM:

A military judge, sitting as a general court-martial, convicted the appellant, in accordance with his pleas, of three specifications of violating a lawful general regulation (Secretary of the Navy Instruction 5300.28E (Instruction)) in violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892. The military judge sentenced the appellant to a

reprimand and a bad-conduct discharge.  The convening authority approved the sentence as adjudged.

The appellant raises two assignments of error (AOE).  First, he claims that the military judge abused his discretion by accepting the appellant's guilty pleas to Specifications 1 and 2 of Charge I since there was insufficient evidence to support a finding that the substances ingested were actually the substances charged.  Second, he argues that the Instruction's definition of "wrongful" precludes a finding that ingestion of the substances alleged in Specifications 1 and 3, to wit, Dextromethorphan (DXM) and Wellbutrin, as "conduct with punitive consequences[.]"[1]

After carefully considering the record of trial, the submissions of the parties, and the appellant's assignments of error, we conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed.  Arts. 59(a) and 66(c), UCMJ.[2]

## Background

In November of 2013, the appellant was an active duty Marine attached to Headquarters Battalion, 3d Marine Division, III Marine Expeditionary Force in Okinawa, Japan.  After two deployments and the death of his brother in June 2013, the appellant struggled with Post Traumatic Stress Disorder and major depressive disorder, which he attempted to combat by consuming alcohol.  When the appellant expressed to Lance Corporal (LCpl) LA his desire to stop drinking, LCpl LA suggested replacing alcohol with DXM, a concentration of the active ingredient in many cough medicines.

Later, LCpl LA provided the appellant what the appellant believed to be homemade DXM pills.  On 8 November 2013, the appellant ingested 15-20 of the pills with the intent of getting

---

[1] Appellant's Brief of 17 Mar 2015 at 15.

[2] Although not raised by the parties, we note that the first ten pages of the Record of Trial (covering the appellant's arraignment) are not properly authenticated.  RULE FOR COURTS-MARTIAL 1104, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ED.).  In the absence of some allegation of prejudice, and because the matters covered in the brief initial session of appellant's court-martial were repeated in the sessions that were properly authenticated, we find the error harmless.  *See United States v. Merz,* 50 M.J. 850, 854 (N.M.Ct.Crim.App. 1999).

2

"high," but the pills had no perceivable effect upon him.[3]  When the pills did not work as expected, the appellant accepted LCpl LA's suggestion to take "Bron," a Japanese cough medicine apparently available in Japan without a prescription and containing ingredients capable of causing stupefaction of the central nervous system.  LCpl LA provided the appellant with 8 liquid ounces of what LCpl LA told the appellant was Bron, although Bron typically comes in pill form.  The appellant did not see LCpl LA make the concoction, but consumed it with the intent of stupefying his central nervous system.[4]  The substance had "subtle to no effect" on the appellant.[5]

LCpl LA further suggested that the appellant ingest Wellbutrin, a generic brand of the pharmaceutical compound Bupropion used to treat depression.[6]  The appellant watched LCpl LA shave off the time release coating and crush pills the appellant believed to be Wellbutrin.  The appellant then snorted the resulting powder with the intent of stupefying his central nervous system.[7]  The appellant pled guilty to all three specifications of the charge, admitting that he ingested the substances, which he believed to be DXM, Bron, and Wellbutrin, with the intention of stupefying his central nervous system.

Additional facts necessary to resolve the assigned errors are included below.

**Discussion**

**Providence of the Pleas to Specifications 1 and 2**

The appellant's first AOE contends that the military judge abused his discretion by accepting guilty pleas to Specifications 1 and 2 without a sufficient factual basis upon which to conclude that the substances ingested by the appellant were in fact DXM or Bron.  "[W]e review a military judge's decision to accept a guilty plea for an abuse of discretion and questions of law arising from the guilty plea *de novo*." *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008); *see also United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991).

---

[3] Record at 36.

[4] *Id*. at 37-38.

[5] Prosecution Exhibit 3 at 3.

[6] Appellant's Brief at 5, n3.

[7] Record at 38-39.

"[B]efore accepting a guilty plea, a military judge must . . . ensure that a factual basis for each element exists." *United States v. Barton*, 60 M.J. 62, 64 (C.A.A.F. 2004) (citation omitted). This basis is sufficiently established if "the factual circumstances as revealed by the accused himself objectively support that plea," *id.* (citation and internal quotation marks omitted), and we afford a military judge "wide discretion" in determining whether that factual basis exists, *United States v. Adams*, 60 M.J. 912, 913 (N.M.Ct.Crim.App. 2005) *aff'd*, 63 M.J. 223 (C.A.A.F. 2006). As a result, we will only overturn a military judge's acceptance of a guilty plea if the record of trial shows a "substantial basis in law or fact" for questioning it. *See Inabinette*, 66 M.J. at 322. Finally, we will not speculate post-trial as to the existence of facts which might invalidate an appellant's guilty pleas. *See United States v. Johnson*, 42 M.J. 443, 445 (C.A.A.F. 1995).

The appellant entered into a Stipulation of Fact (PE 1), wherein he admitted that DXM is "concentrated dextromethorphan" and that he ingested this substance as charged.[8] The appellant also admitted that he ingested the substance "Bron."[9] After being sworn, the appellant admitted that his stipulation of fact was "true and accurate" and that the "facts contained in this document are true."[10] During the providence inquiry, the appellant also admitted that he "knowingly and willfully violated the instruction by using DXM and Bron,"[11] and goes on to admit that he orally ingested both substances.[12] Moreover, prior to accepting the appellant's plea, the military judge explained the elements of the charged offense, to include identifying DXM and Bron as "over-the-counter drugs or pharmaceutical compounds."[13] When asked by the military judge whether "[o]n each occasion spelled out by the three specifications, did you use these drugs with the intent of inducing or enabling intoxication, excitement, or stupification of your central nervous system[,]" the appellant responded in the affirmative.[14]

---

[8] PE 1 at ¶¶ 9 and 10.

[9] *Id.* at ¶ 13.

[10] Record at 27.

[11] *Id.* at 29-30.

[12] *Id.* at 35 and 38, respectively.

[13] *Id.* at 32.

[14] *Id.* at 40.

Further, when asked by the military judge whether "[o]n each occasion and for every specification, did you know that what you were doing was against the law[,]" he again responded in the affirmative.[15]  Finally, while the appellant claimed the DXM had "no effect" on him, he informed law enforcement that the Bron had "subtle to no effect [although he] told [the Marine who provided it to him it provided an] intense high."[16]

The appellant argues that the lack of the anticipated effect of the substances, the absence of any evidence of a chemical analysis of the two substances, and the fact that no urinalysis was performed is sufficient to raise a substantial basis to question the factual predicate of the plea.  We disagree.  While these are perhaps crucial questions of fact at a contested trial, our focus is not on evidence missing from the record, for by pleading guilty the appellant "knowingly waived a trial of the facts." *United States v. Faircloth*, 45 M.J. 172, 174 (C.A.A.F. 1996).  Instead, any questions as to whether the elements of an offense are properly established by the evidence "must be analyzed in terms of providence of his plea, not sufficiency of the evidence." *Id*.  On this record, and affording the military judge's decision to accept this plea "wide discretion," we find that "the factual circumstances as revealed by the accused himself objectively support" the appellant's plea and that no "substantial basis" exists for questioning it.

<u>Does the Instruction Prohibit the Use of the Substances Charged in Specifications 1 and 3</u>

In the appellant's second AOE, he asserts that the Instruction's definition of "wrongful" does not apply to the conduct outlined in Specifications 1 and 3, the non-medical use of DXM and Wellbutrin.[17]

For his non-medical use of DXM and Wellbutrin, the appellant was charged with violating paragraph 5(c) of the Instruction, which states:

---

[15] *Id.* at 43.

[16] PE 3 at 3.

[17] The appellant does not include his use of Bron in AOE #2, because Bron contains codeine, a schedule II drug, and thus qualifies as a controlled substance.  Appellant's Brief at 4, n2.

Other Substance Abuse.  The wrongful use, possession, manufacture, distribution, importation into the customs territory of the United States, exportation from the United States, and introduction onto an installation, vessel, vehicle, or aircraft used by or under the control of the Armed Forces by persons in the DON of controlled substance analogues (designer drugs), products containing synthetic THC agonists (e.g., spice), natural substances (e.g., fungi, excretions, plant substances such as salvia divinorm), and or a prescribed or over-the-counter drug or pharmaceutical compound, with the intent to induce or enable intoxication, excitement, or stupefaction of the central nervous system, is prohibited and will subject the violator to punitive action under reference (b) or adverse administrative action or both.  Although not illegal to possess, using chemicals illicitly for purposes other than what they are intended for, (e.g., rubbing alcohol, ethanol), and propellants and inhalants (e.g., dust-off, nitrous oxide), is prohibited and the violator will also be subject to punitive action under reference (b) or adverse administrative action or both.

The definition of "wrongful" is found in enclosure (4) of the Instruction.  Paragraph 18 of that enclosure states, in relevant part:

Wrongful.  Possession, use, distribution or manufacture of *a controlled substance* is wrongful if it is without legal justification, authorization or excuse, and includes use contrary to the directions of the manufacturer or prescribing healthcare provider[.] (Emphasis added).

The appellant argues that, since the Instruction's definition of "wrongful" includes only the use of a "controlled substance," the appellant's use of the non-controlled substances DXM and Wellbutrin[18] "does not fall within the punitive ambit of paragraph 5(c)."[19]  Alternatively, the appellant argues that the definition of "wrongful" renders the Instruction ambiguous and

---

[18] The parties agree that neither DXM nor Wellbutrin are "controlled" substances as that term is defined in Title 21 U.S.C. § 812.

[19] Appellant Brief at 13.

6

this court should resolve doubts and ambiguities in the appellant's favor.[20]

"'[P]enal statutes applicable to servicemembers and military directives intended to govern their conduct must convey some notice of the standards of behavior they require.'" *United States v. Ferguson*, 40 M.J. 823, 829 (N.M.C.M.R. 1994) (quoting, *United States v. Tedder*, 24 M.J. 176, 180 (C.M.A. 1987)). This is so because "Due Process requires that adequate notice be given as to what acts constitute a crime and what the penalty may be." *United States v. Ettleson*, 13 M.J. 348, 368 n.26 (C.M.A. 1982). As we noted, paragraph 5(c) of the Instruction prohibits the "wrongful" use of over the counter drugs "with the intent to induce or enable intoxication, excitement, or stupefication of the central nervous system." Further, the operative words defining "wrongful" state that such use is wrongful if "it is without legal justification, authorization or excuse, and includes use contrary to the directions of the manufacturer or prescribing healthcare provider[.]" While we concede that the Secretary's use of the words "of a controlled substance" injects a technical inconsistency into the Instruction, we nonetheless hold that the appellant's use of DXM and Wellbutrin was prohibited by the Instruction and that the appellant had clear notice that was so.

It has long been an axiom of statutory construction that penal statutes are to be strictly construed. *United States v. Rowe*, 32 C.M.R. 302, 311 (C.M.A. 1962). We also observe that the rules applicable to the construction of statutes are applicable to the construction of punitive regulations. *United States v. Scott*, 46 C.M.R. 25, 28 (C.M.A. 1972); *see also United States v Baker*, 40 C.M.R. 216, 219 (C.M.A. 1969); *United States v Sweitzer*, 33 C.M.R. 251, 252 (C.M.A. 1963). Thus we concur with the appellant that we must strictly construe punitive General Orders.

However, it is also axiomatic that, while "'penal laws are to be construed strictly . . . they are not to be construed so strictly as to defeat the obvious intent of the legislature.'" *United States v. Craig*, 67 M.J. 742, 746 (N.M.Ct.Crim.App. 2009) (quoting *United States v. Wiltberger*, 18 U.S. 76 (1820)), *aff'd*, 68 M.J. 399 (C.A.A.F. 2010) (*per curiam*). *See also United States v. Duke,* 37 C.M.R. 80, 84 (C.M.A. 1966) (holding that while a criminal statute should be strictly construed, "it should not be construed to defeat the clear intention of

---

[20] *Id.* at 15.

Congress.  That construction must be adopted which best effectuates the language and purpose of the provisions of the act"); *United States v. Rowe*, 32 C.M.R. 302, 311 (C.M.A. 1962) (although criminal statutes should be strictly construed, "they are not to be construed so strictly as to defeat the obvious intention of the legislature"); *United States v. Sturmer*, 1 C.M.R. 17, 18 (C.M.A. 1951) (criminal statutes must be strictly construed, "but not strained to the point of an obvious avoidance of their plain intent and wording"); *Ferguson*, 40 M.J. at 830 ("even a penal statute should be construed in a way that will accomplish its obvious purpose."  (Citation and internal quotation marks omitted)).  We therefore decline to apply the partial interpretation of the Instruction the appellant urges.  Instead, we turn next to discerning the Secretary's intent in promulgating the Instruction.

We need not look far.  The stated purpose of the Instruction is to "establish policies and procedures for the prevention and control of alcohol and drug abuse within the Department of the Navy[.]"[21]  Further, paragraph 4(b) of the Instruction is entitled "Policy" and sets forth that "Navy and Marine Corps Members shall never wrongfully use . . . drugs, abuse substances described in paragraph 5(c), or drug abuse paraphernalia."  In addition, paragraph 5 sets forth "Prohibitions Governing the Conduct of DON Military Personnel."  Within the same paragraph, the Secretary reiterates the prohibitions of Article 112(a) of the UCMJ (prohibiting, inter alia, the wrongful use of controlled substances); sets forth the prohibitions of subparagraph 5(c); prohibits the non-medicinal "use, possession, or distribution of drug abuse paraphernalia[;]" and prohibits the utilization of "[d]eceptive [d]evices and [m]ethods to avoid [or assist another in avoiding the lawful] detection of any controlled substance[.]"  Each of the prohibitions are followed by the explicit notification that, "[p]ersonnel violating this prohibition may be subject to punitive action under reference (b) or adverse administrative action or both."  It is therefore clear to us that the Secretary's intent, in pertinent part, in promulgating this Instruction was to prohibit the "wrongful" use of substances that could "induce or enable intoxication, excitement, or stupefaction of the central nervous system."  Therefore, limiting the Instruction's applicability to only "controlled substances" would clearly frustrate that intent.  Such a reading is particularly unsuitable upon recognition that the operative words of the definition state that use is "wrongful" if it is

---

[21] Paragraph 1 of the Instruction, entitled "Purpose."

"without legal justification, authorization or excuse, and includes use contrary to the directions of the manufacturer or prescribing healthcare provider[.]"  Based upon these factors, construing the Instruction to only prohibit the wrongful use of "controlled substances" would result in "an obvious avoidance" of the Instruction's "plain intent."  Construed in a way that "will accomplish its obvious purpose," we hold the Instruction properly prohibits the appellant's use of DXM and Wellbutrin.[22]

## Conclusion

The findings and the sentence as approved by the convening authority are affirmed.

For the Court

R.H. TROIDL
Clerk of Court

---

[22] We also note that the appellant does not specifically allege, and we do not find, that he was prejudiced by any lack of notice.  In both PE 1 as well as his responses to the military judge's providency questions, the appellant admits that the Instruction was "lawful," that he understood the terms of the Instruction, and that he violated the Instruction by using DXM and Wellbutrin.