# United States Navy–Marine Corps Court of Criminal Appeals

---

**UNITED STATES**
*Appellee*

v.

**Johnnie C. PRATER**
**Airman (E-3), U.S. Navy**
*Appellant*

---

**No. 201800065**

---

Appeal from the United States Navy-Marine Corps Trial Judiciary.

*Military Judges:* Captain Franklin J. Foil, JAGC, USN (arraignment); Commander Stephen Reyes, JAGC, USN (trial).

*Sentence Adjudged:* 27 October 2017 by a general court-martial convened at Region Legal Service Office, Fleet Activities Yokosuka, Japan, consisting of officer and enlisted members.

*Approved Sentence:* 3 years' confinement, reduction to paygrade E-1, forfeiture of all pay and allowances for 36 months, and a dishonorable discharge.

---

*Decided:* 7 January 2019

---

*For Appellant:* Captain Andrew R. House, JAGC, USN.

*For Appellee:* Lieutenant George R. Lewis, JAGC, USN.

---

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 30.2.**

_____

Before FULTON, CRISFIELD, and HITESMAN,
*Appellate Military Judges.*

_____

CRISFIELD, Judge:

A general court-martial consisting of officer and enlisted members convicted the appellant, contrary to his pleas, of one specification of making a false official statement in violation of Article 107, Uniform Code of Military Justice (UCMJ), one specification of sexual assault in violation of Article 120(b)(1)(B), and one specification of abusive sexual contact in violation of Article 120(d), 10 U.S.C. §§ 907 and 920 (2012).[1] The members sentenced the appellant to 3 years' confinement, reduction to paygrade E-1, forfeiture of all pay and allowances for 36 months, and a dishonorable discharge. The convening authority (CA) approved the sentence and, with the exception of the punitive discharge, ordered it executed.

The appellant raises two assignments of error (AOEs): (1) whether he was denied effective assistance of counsel by his trial defense counsel (TDC), LT AZ; and (2) whether the promulgating order complies with RULE FOR COURTS-MARTIAL (R.C.M.) 1114(c), MANUAL FOR COURTS-MARTIAL, UNITED STATES (MCM) (2016 ed.) because it includes an errant finding unrelated to any charge or specification.

We find that the promulgating order contains an erroneous finding, and we order corrective action in our decretal paragraph. After taking this corrective action, we are convinced that the findings and sentence are correct in law and fact and find no error materially prejudicial to the substantial rights of the appellant. Arts. 59(a) and 66(c), UCMJ.

## I. BACKGROUND

The appellant and victim, Aviation Ordnanceman Airman (AOAN) VG, were acquaintances at their advanced technical training school ("A" school) in Pensacola, Florida. Following "A" school they were assigned to different aviation squadrons based at Naval Air Facility (NAF) Atsugi, Japan.

_____

[1] Appellant was acquitted of another specification of sexual assault against a different victim arising from an incident in April 2017.

AOAN VG arrived in Atsugi in late June 2016. She flew on board the USS RONALD REAGAN (CVN 76) about two weeks later to join her embarked squadron. While aboard the aircraft carrier, AOAN VG ran into the appellant, who was assigned to a different squadron. On the ship the two consensually kissed and talked several times about "hooking up."[2] Both returned to NAF Atsugi at the end of July.

On 7 August 2016, AOAN VG texted the appellant and asked if he would like to go swimming. He did not respond until about 2215 that night when he invited her to come to his barracks room to hang out. She said she was tired and had to work the next day, but the appellant was persistent and asked her to meet him so they could briefly talk. She agreed to meet him and went to his room.

After a short conversation AOAN VG decided to leave the appellant's room and walked out into the passageway. He followed her into the passageway and convinced her to return to his room. Back inside his room the appellant kissed AOAN VG repeatedly and she said, "No, we're not doing this tonight, I'm tired."[3] The appellant did not stop his advances and AOAN VG told him no again. The appellant then lifted AOAN VG onto his bed and kissed her again. When AOAN VG turned her head to avoid his kisses, the appellant kissed her forcefully on her neck, leaving hickeys. The appellant removed his pants and AOAN VG again said "No, I don't want this."[4] She tried to push him off but appellant removed her underwear from under her dress and inserted his penis in her vagina. While he was inside her, AOAN VG said "this is painful, this hurts, please stop."[5] He did not. Eventually, she was able to escape his grasp and get off the bed. She pulled her dress down, grabbed her underwear and wallet, and left the appellant's room.

AOAN VG went back to her barracks room, stripped off her clothes, and sat on the floor of her shower crying until her roommate and a friend intervened to find out what was wrong. AOAN VG informed them that she had been raped by the appellant. The appellant and AOAN VG exchanged text messages later that night in which the appellant expressed surprise that AOAN VG acted the way she did and AOAN VG stated that she had not consented to the sexual intercourse.

---

[2] Record at 478.

[3] Record at 465.

[4] Record at 465.

[5] Record at 468.

The next day AOAN VG went to the base medical clinic to get a sexual assault forensic examination (SAFE). When filling out the "non-assault related history" section of the SAFE form, AOAN VG indicated that she engaged in sexual intercourse on 5 August 2016, two days before the appellant assaulted her. Subsequent DNA analysis of samples taken from AOAN VG revealed the presence of DNA from AOAN VG, the appellant, and an unknown male contributor.

At trial the government did not use the DNA evidence from AOAN VG against the appellant, but it called a DNA expert to testify about the results of the forensic testing of the second alleged victim. The appellant was charged with sexually assaulting this victim in April 2017. The government did not question the DNA expert about DNA results from AOAN VG. However, on cross-examination from the trial defense counsel, LT AZ, the DNA expert was asked whether she communicated with the investigating agent, Naval Criminal Investigative Service (NCIS) Special Agent (SA) Mark Garhart, about the DNA testing for AOAN VG. In answering the question, the DNA expert stated that AOAN VG had indicated on her SAFE form that she had sex two days before the sexual assault. Government counsel immediately objected to the testimony on MILITARY RULE OF EVIDENCE (MIL. R. EVID.) 412(a), MCM, grounds and the court-martial went into a closed session without the members. In the closed session the military judge asked LT AZ if she intended to delve into AOAN VG's prior sexual activity. LT AZ indicated that she had not intended to elicit that answer.[6] The DNA expert had simply provided more information than she was asked. LT AZ stated that she wanted to get information about the DNA expert's communications with SA Garhart in order to show that SA Garhart lied in his testimony. The members were brought back and instructed to disregard the witness's statement about AOAN VG's prior sexual activity.[7] No other information about AOAN VG's prior sexual activity was presented.

The appellant's trial strategy was to attack the credibility of SA Garhart. SA Garhart was the lead investigative agent for both the sexual assault allegation involving AOAN VG in August 2016 and the unrelated sexual assault allegation of which the appellant was acquitted. The appellant wanted to show that SA Garhart was biased against the appellant and manipulated the written statements of the two victims, as well as other witnesses.[8]

---

[6] Record at 817-818.

[7] Record at 821.

[8] *See, e.g.,* Record at 483-484 and 994.

LT AZ did not present any evidence regarding AOAN VG's sexual activity from two days before the assault. The record contains no further detail about this sexual activity, its circumstances, or the identity of AOAN VG's prior sexual partner. The appellant now claims that LT AZ was ineffective because she failed to present this evidence. The appellant claims the evidence would have shown AOAN VG had a motive to fabricate her allegation of sexual assault. Additional facts necessary to the resolution of the assignments of error are included below.

## II. DISCUSSION

### A. Ineffective assistance of counsel

The appellant avers that he was denied effective assistance of counsel because his TDC failed to present evidence of AOAN VG's motive to fabricate at trial. We disagree. We review claims of ineffective assistance of counsel *de novo. United States v. Harpole,* 77 M.J. 231, 236 (C.A.A.F. 2018). The Sixth Amendment entitles criminal defendants to representation that does not fall "below an objective standard of reasonableness" in light of "prevailing professional norms." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). In order to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice. *Id.* at 687.

With respect to *Strickland's* first prong, counsel are presumed to be competent and our inquiry into an attorney's representation is "highly deferential" to that attorney. *Id.* at 689. We employ "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* The appellant has the heavy burden of establishing a factual foundation for a claim of ineffective representation. *United States v. Grigoruk*, 52 M.J. 312, 315 (C.A.A.F. 2000). We will not second-guess strategic or tactical decisions made by the trial defense counsel unless the appellant can show specific defects in counsel's performance that were unreasonable under prevailing professional norms. *United States v. Mazza*, 67 M.J. 470, 475 (C.A.A.F. 2009). Furthermore, we will not compel a defense counsel to justify decisions made at trial until we review the allegations of ineffectiveness and the government response, examine the record, and determine that the allegation and record contain evidence which, if unrebutted, would overcome the presumption of competence. *Grigoruk*, 52 M.J. at 315.

In order to show prejudice under *Strickland's* second prong, the appellant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694. "Moreover, a verdict or conclusion

only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696.

We apply a three-part test to determine whether the presumption of competence has been overcome:

> 1. Are appellant's allegations true; if so, "is there a reasonable explanation for counsel's actions"?

> 2. If the allegations are true, did defense counsel's level of advocacy "fall measurably below the performance . . . [ordinarily expected] of fallible lawyers"?

> 3. If defense counsel was ineffective, is there "a reasonable probability that, absent the errors," there would have been a different result?

*United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011) (quoting *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991)) (alterations in original). The first two prongs of the *Gooch* test concern the deficiencies in the TDC's performance, while the third prong looks at the impact of the TDC's errors on the outcome of the trial.

## B. Deficient Performance

### 1. The appellant's failure to meet his burden

Applying the first prong of the *Gooch* test, the appellant has failed to present any evidence that AOAN VG had a preexisting romantic relationship that would be harmed if it became known that AOAN VG had consensual sex with the appellant. The record is devoid of evidence in this regard other than the notation on the SAFE form that shows AOAN VG had sex with someone other than the appellant two days before the assault. There is nothing in the record to indicate whether AOAN VG's prior sex partner was a steady, long-term boyfriend, a casual non-exclusive sexual partner, or a one-night stand. The mere fact that the victim engaged in sexual intercourse with someone other than the appellant two days prior to the sexual assault is not, by itself, evidence of the victim's motive to fabricate her prior statements or testimony at trial.

Evidence that the victim had sexual intercourse with another individual two days prior to her encounter with the appellant is inadmissible at trial unless it meets one of three specific exceptions. MIL. R. EVID. 412(a). The appellant now avers that this evidence would have been admissible under the third exception, which "permits the admission of 'evidence the exclusion of which would violate the constitutional rights of the accused.'" *United States v. Gaddis*, 70 M.J. 248, 252 (C.A.A.F. 2011) (quoting MIL. R. EVID. 412(b)(1)(C) (oth-

er quotation marks omitted). We find that this evidence, alone, is not admissible under MIL. R. EVID. 412(b)(1)(C).

The Court of Appeals for the Armed Forces has recognized that an individual's interest in protecting an established relationship can provide a motive for that individual to lie about the consensual nature of a sexual encounter. *United States v. Smith*, 68 M.J. 445, 448-49 (C.A.A.F. 2010); *See also United States v. Sanchez*, 44 M.J. 174, 179 (C.A.A.F. 1996). However, even if the appellant could show there was evidence of a preexisting romantic relationship, the appellant would still need to present additional facts demonstrating that infidelity might lead to some harm that AOAN VG would like to avoid. *See generally United States v. Ellerbrock*, 70 M.J. 314, 319-20 (C.A.A.F 2011); *United States v. Key,* 71 M.J. 566, 571 (N-M. Ct. Crim. App. 2012), *rev. denied* 71 M.J. 452 (C.A.A.F. 2012); *United States v. Alston*, 75 M.J. 875, 881-82 (A. Ct. Crim. App. 2016), *rev. denied* 76 M.J. 130 (C.A.A.F. 2017). The appellant bears the burden to produce such evidence, *United States v. Moulton*, 47 M.J. 227, 229 (C.A.A.F. 1997), and the record contains none. Without such evidence there is no basis for us to find that the appellant's allegation has merit. The first prong of the *Gooch* test has therefore not been met.

*2. Trial defense counsel's advocacy did not fall below the performance expected of counsel.*

In addressing the second prong of the *Gooch* test, we assume *arguendo,* that there was evidence that AOAN VG had a motive to fabricate her allegation because she did not want the person she had sex with two days earlier to know that she had consensual sexual intercourse with the appellant. We still need to find that LT AZ's advocacy fell measurably below the performance expected of counsel before we could hold that the appellant received ineffective assistance of counsel.

Strategic and tactical decisions made by counsel will not generally be second-guessed on appeal. *Mazza*, 67 M.J. at 475. Where an appellant attacks the trial strategy or tactics of the TDC, the appellant must show specific defects in counsel's performance that were "unreasonable under prevailing professional norms." *Id.* (quoting *United States v. Perez*, 64 M.J. 239, 243 (C.A.A.F. 2006)).

LT AZ focused her defense of the appellant on attacking the credibility of NCIS SA Garhart. Other than the appellant, SA Garhart was the only common link between the two charged sexual assaults. The two incidents were circumstantially different, involved unrelated victims, and were separated in time by ten months. It was reasonable for LT AZ to conclude that as the critical link between the two incidents and victims, SA Garhart was the center of gravity at which she should direct the defense's energy. Attacking AOAN

VG's credibility with a possible motive to lie would not necessarily have been inconsistent with this strategy, but it would not have helped the appellant defend against the specification regarding the second alleged victim. The strategy also allowed the defense to treat the alleged victims with kid gloves and avoid an all-out attack on them by focusing the defense's attack on the NCIS special agent. This was a rational defense strategy: destroying SA Garhart's credibility could potentially have cast reasonable doubt on the accuracy of both alleged victims' statements without the risk of alienating the members.

Although the appellant characterizes his alternative trial strategy as "defense counsel 101,"[9] even if the military judge had allowed the TDC to ask AOAN VG about her sexual partner two days prior to her interaction with the appellant, absent further evidence, there is nothing to indicate a reasonable member would find AOAN VG had a motive to lie about being sexually assaulted by the appellant. The mere fact that she disclosed this prior sexual contact to the SAFE examiner demonstrates she was candid about the encounter. It is also possible that a reasonable member would find her *less likely* to consent to sex with the appellant if she was in a preexisting romantic relationship. In any event we need not speculate about whether LT AZ selected the best possible litigation strategy for her representation of the appellant. "We do not look at the success of a criminal defense attorney's trial theory, but rather whether counsel make an objectively reasonable choice in strategy from the alternatives available at the time." *United States v. Dewrell,* 55 M.J. 131, 136 (C.A.A.F. 2001) (citations omitted). We find she had a reasonable strategy and her tactical performance was at or above the level ordinarily expected of fallible lawyers. The second prong of the *Gooch* test has therefore also not been met.

**C. Prejudice**

Assuming *arguendo* that LT AZ was ineffective for failing to present evidence of a preexisting relationship, we test for prejudice. That is, is there a "reasonable probability that, absent the errors," there would have been a different result. *Polk*, 32 M.J. at 153 (citations omitted).

The government's case against appellant with regard to the sexual assault of AOAN VG was very strong. AOAN VG testified that she told the appellant "no" multiple times and the appellant even admitted to SA Garhart that he heard AOAN VG say "no" prior to having sex with her. AOAN VG re-

---

[9] Appellant's Brief at 11.

ported the assault soon after the incident and her account remained consistent throughout the investigation and trial. Witnesses testified consistently as to her distraught emotional condition immediately following the assault.

Even assuming that LT AZ was deficient in failing to present evidence of AOAN VG's existing romantic relationship, we do not find that such evidence would have changed the result of the court-martial. The third prong of the *Gooch* test has therefore also not been met.

Based on our review of the record and the above analysis, we conclude that the appellant was afforded effective assistance of counsel as guaranteed by the Sixth Amendment.

### D. Error in the Promulgating Order

The promulgating order erroneously lists a plea and finding of "Not Guilty" underneath the accurate listing of a plea of "Not Guilty" and a finding of "Guilty" for Specification 2 under Charge II.

An appellant is entitled to an official record accurately reflecting the results of his proceedings. *United States v. Crumpley*, 49 M.J. 538, 539 (N-M. Ct. Crim. App. 1998). We test error in court-martial orders under a harmless-error standard. *Id.*

A court-martial promulgating order must contain the following information: (1) the type of court-martial and the convening command; (2) a summary of all charges and specifications on which the appellant was arraigned; (3) the appellant's pleas; (4) the findings or disposition of all charges and specifications on which the appellant was arraigned; (5) if adjudged, the sentence; and (6) a summary of the action taken by the CA in the case. R.C.M. 1114(c)(1).

The erroneous insertion of a spurious plea and finding was clear error; however, the error was harmless as it did not materially prejudice the appellant's substantial rights. To ensure the appellant has an official record which accurately reflects his proceedings, we order that the supplemental promulgating order reflect the correct information.

### E. Military Judge's Failure to Authenticate His Portion of the Record of Trial

Although not raised as an error by appellant, we note that the military judge who presided over appellant's arraignment failed to authenticate the record of trial for his portion of the trial. There is no explanation for why he did not do so. A different military judge presided over the motions, trial, and sentencing proceedings and properly authenticated his portion of the record of trial.

Whether a record of trial is complete and substantially verbatim is a question of law we review *de novo. United States v. Henry*, 53 M.J. 108, 110 (C.A.A.F. 2000). RULE FOR COURTS-MARTIAL 1104(a)(2)(A) provides in part, that "[i]f more than one military judge presided over the proceedings, each military judge shall authenticate the record of the proceedings over which that military judge presided. . . ." Here, with the exception of the arraignment that made up the first 14 pages of the record, the entire record of trial has been authenticated. The failure to authenticate the arraignment proceedings constituted error under R.C.M. 1104(a)(2)(A). *See United States v. Robinson*, 24 M.J. 649, 654 (N.M.C.M.R. 1987). However, absent a specific finding of prejudice to the appellant, the error is harmless and does not preclude this court from conducting meaningful review of the appellant's case under Article 59(a), UCMJ. *See United States v. Merz*, 50 M.J. 850, 854 (N-M. Ct. Crim. App. 1999).

In this case the appellant has alleged no prejudice from the error and we can find none. Therefore, no relief is warranted.

## III. CONCLUSION

The findings and sentence as approved by the convening authority are affirmed. The supplemental court-martial order will reflect that the appellant plead "Not Guilty" and was found "Guilty" of Specification 2 under Charge II.

Senior Judge FULTON and Judge HITESMAN concur.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court