# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 38874**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Daniel V. ROBLERO**
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 17 February 2017

————————————

*Military Judge:* Gregory O. Friedland.

*Approved sentence:* Dishonorable discharge, forfeiture of $1,031.00 pay per month until the execution of the punitive discharge, reduction to E-1, and a reprimand. Sentence adjudged 24 April 2015 by GCM convened at Joint Base Pearl Harbor-Hickam, Hawaii.

*For Appellant:* Captain Patricia Encarnación Miranda, USAF.

*For Appellee:* Major Meredith L. Steer, USAF; Gerald R. Bruce, Esquire.

Before DREW, J. BROWN, and MINK, *Appellate Military Judges.*

Chief Judge DREW delivered the opinion of the court, in which Senior Judge J. BROWN and Judge MINK joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

DREW, Chief Judge:

At a general court-martial composed of officer and enlisted members, Appellant was convicted, contrary to his pleas, of two specifications of sexual assault by causing bodily harm in violation of Article 120(b), Uniform Code of

Military Justice (UCMJ), 10 U.S.C. § 920(b), and sentenced to a dishonorable discharge, total forfeitures, reduction to E-1, and a reprimand. The convening authority reduced the forfeitures to $1,031.00 pay per month until execution of the punitive discharge and otherwise approved the sentence as adjudged.

Appellant raises several assignments of error on appeal: (1) whether the evidence is factually sufficient; (2) whether the military judge erred in giving the Air Force Trial Judiciary mandated reasonable doubt instruction;[1] (3) whether Appellant's right to due process of law during sentencing was violated when the court-martial considered an unsworn statement from the victim;[2] and (4) whether Appellant's right to due process of law was violated when he was tried by a panel that was not required to be unanimous in their verdict. Further, Appellant requested this court consider several additional assignments of error, pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). We combine and discuss three of them below: whether trial defense counsel provided ineffective assistance of counsel. Having considered the remainder, we find they do not merit either relief or further analysis here. *See United States v. Matias*, 25 M.J. 356, 363 (C.M.A. 1987). While we do find error in the way the military judge handled the victim's unsworn statement, as to all issues, we find no error materially prejudicial to a substantial right of Appellant and thus affirm the findings and sentence.

## I. BACKGROUND

Appellant and the victim, Staff Sergeant (SSgt) RC, were both assigned to the 747th Communications Squadron, Joint Base Pearl Harbor-Hickam, Hawaii. Beginning in early July 2014, they began spending off-duty time with each other in group activities and communicated through social media. On Saturday morning, 12 July 2014, SSgt RC drove Appellant, Airman First Class (A1C) JB, and herself to Hanauma Bay, Hawaii, where they went snorkeling and spent some time on the beach. Appellant and SSgt RC eventually began kissing on the beach. They made plans for dinner later in the evening and after lunch SSgt RC drove the three of them back to their

---

[1] Consistent with the recently-decided *United States v. McClour*, No. 16-0455, 2017 CAAF LEXIS 51 (C.A.A.F. 24 Jan. 2017), we find that, absent objection at trial, the instruction did not constitute plain error.

[2] Appellant refers to the victim as the "complaining witness." Article 6b, UCMJ, 10 U.S.C. § 806b, the legal basis for the victim's right to be reasonably heard during the sentencing hearing, uses the term "victim." While we can understand—given his plea and posture on appeal—why Appellant would prefer a less conclusory term, we use the statutory term without intending it to connote any conclusions on our part.

respective quarters. While being dropped off at his residence, Appellant asked SSgt RC if he could come over before dinner. She told him that she was planning on taking a nap before dinner, but that she would think about it and let him know. After dropping A1C JB back at the base, SSgt RC contacted Appellant to let him know that he could come over to her apartment, but that she was still planning on taking a nap.

When Appellant arrived at SSgt RC's apartment, she met him at the door in short shorts and a tank top. They sat in her living room for a short time until SSgt RC said that she still wanted to take a nap but offered to watch a movie with Appellant on her bed until she fell asleep. She let Appellant pick out a movie (because she didn't anticipate that she'd be awake for the whole movie) and they went into her bedroom to watch it. They put the movie on and lay down on SSgt RC's California king-size bed.

After a short period of watching the movie, Appellant leaned toward SSgt RC and she leaned toward him and they began consensually kissing. When Appellant started to be more sexually aggressive, SSgt RC asked him to stop and she rolled over to her side and they continued watching the movie. Minutes later they began kissing again, followed by Appellant becoming more sexually forward and once again he backed off when she told him to stop. At one point, Appellant pulled SSgt RC on top of him (which she considered a "smooth move" on his part) and then he reached behind her and unclasped her bra. SSgt RC immediately got up, snapped her bra back together, and announced that her clothes were going to remain on, but she also said that she was still okay with kissing.

They resumed kissing and Appellant eventually slipped his hand down the back of SSgt RC's shorts. She pulled his hand out and reminded him that he would be leaving town in a couple of days for a two-week trip (during which he would see his estranged long-distance girlfriend) and she told him that if their relationship was going anywhere he could wait until after he got back. Appellant eventually rolled on top of SSgt RC and put one hand under her buttocks and put his other hand up her shorts and penetrated her vulva with his fingers. Upon penetration, SSgt RC then "froze" and laid lifeless, though she continued to protest verbally with requests to "please stop, please wait." Appellant then put his penis inside her vulva and began having sexual intercourse with her. As he was having sexual intercourse with her, he told her that "it felt so good." SSgt RC started crying. Appellant continued sexual intercourse until he ejaculated, at which point he asked her if she was crying.

SSgt RC slid out from under Appellant and went into the bathroom and remained there for some time while she cleaned herself up with sanitary wipes. When she came out of the bathroom, Appellant was still in her apartment, sitting on the couch. She didn't ask Appellant to leave, but instead put

on a video in the living room, which they watched on the couch together. Appellant asked to stay the night, but she said he could only stay another 30 minutes and he eventually left around 8:30 p.m.

As soon as Appellant left, SSgt RC called her wingman, a male platonic friend, and asked if she could come over and stay the night in his guest room (something he had made a standing offer to SSgt RC and some of his other friends). Her wingman agreed and she stayed at his apartment Saturday night and all day Sunday before returning to her apartment. When she got home, SSgt RC made up the futon in her guest room and slept there, because she couldn't bring herself to sleep on her bed. The next day, Monday, she called her supervisor and asked how to contact a chaplain. Concerned for her well-being, her supervisor went over to her apartment with some others in her chain of command and they ultimately took SSgt RC to the hospital where she asked to be tested for pregnancy and any sexually transmitted diseases. The next day, Tuesday, she made a restricted report of sexual assault.

A couple of weeks later, SSgt RC converted her report to unrestricted when she learned that Appellant was going to be moved into her duty section. She broke down crying and eventually told her supervisor (after speaking with her victim advocate) that Appellant had sexually assaulted her and she would not be able to work in the same duty section with him. After she filed her unrestricted report and with AFOSI's assistance, SSgt RC made a pretext phone call to Appellant and engaged in pretext Facebook communications with him. In one of the pretext Facebook communications, SSgt RC texted Appellant "I had a great time that day and even when you got back to the house, but it just seemed like you forced me to be intimate when I wasn't ready yet." Appellant responded, "And i regret that, and if i can erase that part it would have been the best day i've had in years…."

## II. DISCUSSION

### A. Factual Sufficiency

We review issues of factual sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). Our assessment of factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000); *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987).. In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying

"neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

Specification 1 of the Charge alleges Appellant committed sexual assault by causing bodily harm in violation of Article 120(b), UCMJ. To sustain a conviction for this specification of sexual assault, the prosecution was required to prove: (1) that Appellant committed a sexual act upon SSgt RC, to wit: penetrating SSgt RC's vulva with his penis; and (2) that Appellant did so by causing bodily harm to SSgt RC to wit: lying on top of SSgt RC's body while holding her buttocks and penetrating her vulva with his penis without her consent. *See* Department of the Army Pamphlet 27-9 (DA Pam 27-9), Military Judges' Benchbook, ¶ 3–45–14.c. (10 Sep 2014).

Specification 2 of the Charge alleges Appellant committed sexual assault by causing bodily harm in violation of Article 120(b), UCMJ. To sustain a conviction for this specification of sexual assault, the prosecution was required to prove: (1) that Appellant committed a sexual act upon SSgt RC, to wit: penetrating SSgt RC's vulva with his fingers; and (2) that Appellant did so by causing bodily harm to SSgt RC to wit: lying on top of SSgt RC's body while holding her buttocks and penetrating her vulva with his fingers with an intent to gratify his sexual desire and without her consent.

The Government had the burden to prove beyond a reasonable doubt that SSgt RC did not consent to the sexual act and the military judge provided the following definitions at trial regarding consent:

> "Consent" means a freely given agreement to the conduct at issue by a competent person. An expression of lack of consent through words or conduct means there is no consent. Lack of verbal or physical resistance or submission resulting from the use of force, threat of force, or placing another person in fear does not constitute consent. A current or previous dating or social or sexual relationship by itself or the manner of dress of the person involved with the accused in the conduct at issue shall not constitute consent.

> Lack of consent may be inferred based on the circumstances. All the surrounding circumstances are to be considered in determining whether a person gave consent, or whether a person did not resist or ceased to resist only because of another person's actions.

Similarly, the Government was required to prove beyond a reasonable doubt that Appellant did not have a reasonable mistake of fact defense as to

whether SSgt RC consented to the sexual acts. As part of the instruction concerning the defense of mistake of fact, the military judge stated:

> Mistake of fact as to consent is a defense to those charged offenses. "Mistake of fact as to consent" means the accused held, as a result of ignorance or mistake, an incorrect belief that the other person consented to the sexual conduct as alleged. The ignorance or mistake must have existed in the mind of the accused and must have been reasonable under all circumstances. To be reasonable, the ignorance or mistake must have been based on information, or lack of it, that would indicate to a reasonable person that the other person consented. Additionally, ignorance or mistake cannot be based on the negligent failure to discover the true facts. "Negligence" is the absence of due care. "Due care" is what a reasonably careful person would do under the same or similar circumstances.

The defense of mistake of fact as to consent has both subjective and objective elements. *United States v. Paige*, 67 M.J. 442, 455 (C.A.A.F. 2009) ("[T]he mistake of fact defense requires a subjective, as well as objective, belief that [the victim] consented to the sexual intercourse . . . ."); *United States v. Jones*, 49 M.J. 85, 91 (C.A.A.F. 1998) ("[A] mistake-of-fact defense to a charge of rape requires that a mistake as to consent be both honest and reasonable.") (quoting *United States v. Willis*, 41 M.J. 435, 438 (C.A.A.F. 1995)); Rule for Courts-Martial (R.C.M.) 916(j)(1) ("[T]he ignorance or mistake must have existed in the mind of the accused and must have been reasonable under all the circumstances.").

Appellant does not dispute that he engaged in the sexual activity in the specifications. Rather, his position at trial and on appeal is that either SSgt RC consented to the activity or, if she did not, he was reasonably mistaken about her lack of consent. The vast majority of the evidence supporting the convictions of both sexual assault specifications came from SSgt RC's testimony. Her testimony made it clear that she was by no means opposed to some contact with Appellant of a sexual nature. She willingly engaged in kissing him on the beach in the morning and while on her bed later that day. Even after Appellant unclasped her bra in her bedroom, something she did not want, she continued to willingly engage in kissing him after telling him that her clothes were to remain on. However, her willingness to engage in some minor sexual activity does not mean that she necessarily consented to all sexual activity.

SSgt RC's testimony indicated that she was at times sending mixed signals to Appellant that might have caused some confusion in his mind at different times during the evening. Regardless, her testimony also conclusively

establishes that she clearly manifested her non-consent to Appellant after he penetrated her vulva with his fingers. Despite this, Appellant continued to penetrate her vulva with his fingers, and then—over her protests—penetrated her vulva with his penis. Notwithstanding the extensive argument by trial defense counsel that SSgt RC actually consented to the sexual intercourse, this case comes down to a determination by the fact-finder as to whether Appellant was reasonably mistaken that SSgt RC was consenting to all of his acts, including his penetrating her vulva with his fingers and penis.

While SSgt RC's actions could have indicated potential willingness to engage in sexual intercourse, her repeated unequivocal verbal statements for Appellant to "stop" and "wait," as well as her crying once Appellant inserted his penis into her vulva clearly negated any reasonable belief that she was consenting to Appellant's actions.

Cases such as these are very difficult for factfinders. However, SSgt RC's testimony was not the only evidence that Appellant was not reasonably mistaken about her lack of consent. His statements during the pretext phone call and pretext Facebook communications corroborate SSgt RC's testimony that she told him she was not consenting and, more importantly, that he knowingly forced her to be intimate.

Having reviewed the entire record of trial and making allowances for not personally observing the witnesses, we are convinced of Appellant's guilt beyond a reasonable doubt.

**B. Victim's Unsworn Statement**

Appellant asserts his right to due process of law was violated when, over defense objection, the military judge permitted SSgt RC to provide a written and oral unsworn statement to the court members. While we conclude that the military judge abused his discretion in permitting SSgt RC to make a recommendation for a specific sentence, Appellant was not prejudiced by the error.

At trial, Appellant objected to two aspects of SSgt RC's unsworn statement: that a written copy of the unsworn statement was provided to the court members (in addition to the oral presentation) and to the substance of the statement's final paragraph:

> During the pretext phone call, I had asked him if he would get help, and he told me no, that getting help was stupid. But he needs it. He needs help. Throughout this process, I've learned that there is a 24 month Sex Offender Treatment Programs [sic] offered at some confinement facilities, but only the long term ones. It is my hope that SSgt Roblero will get into one of these programs and get the help he needs. However, I've also

learned that because people can get "good time credit" while they are in jail, the only way for him to complete this program is for him to spend a minimum of 3 and a half years in confinement. Anything less than 3 and a half years will not allow him the amount of time needed to finish the treatment program. Without being able to complete this program, I don't believe he would be able to receive the help he needs. . . . I don't want anyone to feel the way I have felt, but I do want to make sure he doesn't do this to anyone else and he gets the help he needs.

The military judge was clearly concerned about the language above and stated as much on the record.[3] However, notwithstanding his expressed belief that information was "completely improper, and I would not allow it," he nevertheless permitted SSgt RC to provide the information to the court members anyway. The military judge erred to the extent that he believed he was powerless to prohibit admission of inadmissible information in the victim's unsworn statement.

The National Defense Authorization Act for Fiscal Year 2014 (FY 2014 NDAA)[4] added Article 6b to the UCMJ, based on the Crime Victims' Rights

---

[3] In his discussion with the Special Victim's Counsel (SVC), the military judge stated:

> Now, I'll ask [SVC], I have read the proposed unsworn statement. I have paid particular attention to the last paragraph. Now, the rules regarding an unsworn statement given by the accused, that says generally it is considered unrestricted. But case law tells us it is not wholly unrestricted. And I know we're venturing into new territory here, in the military courts, and we're relying on the federal courts to give us guidance to follow along. And so the same rules would seem to apply that the victim's unsworn statement is generally considered unrestricted but not wholly unrestricted. And so, the matters in the last paragraph would not be allowed to be testified to by a witness taking the stand. Completely improper, and I would not allow it. Given that fact and the possibility that this last paragraph could cause any reviewing authority in this particular case, because of the change in the law, is going to be an automatic appeal to the Air Force court and possibly up to the Court of Appeals for the Armed Forces, they could look at this and say we're setting aside the sentence because of these comments and then, we're back here all over again and then your client has the option of doing this all over again. I just want to make that clear on the record that that's a possibility by including this paragraph in the unsworn statement.

[4] Pub. L. No. 11333, § 1701(b)(2)(A) (2013).

Act (CVRA), 18 U.S.C § 3771. Article 6b gives a victim the "right to be reasonably heard at . . . [a] sentencing hearing relating to the offense." Article 6b(a)(4)(B), 10 U.S.C. § 806b(a)(4)(B). However, the President did not promulgate R.C.M. 1001A, providing guidance on how to implement Article 6b(a)(4)(B), until after Appellant's trial, on 17 June 2015. R.C.M. 1001A(c) now indicates that the contents of a victim's unsworn statement is limited to victim impact and matters in mitigation. R.C.M. 1001A(e) also now expressly permits a victim to make an unsworn statement orally, in writing, or both.

We review a military judge's admission or exclusion of evidence, including sentencing evidence, for an abuse of discretion. *United States v. Stephens*, 67 M.J. 233, 235 (C.A.A.F. 2009) (citing *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000)). The admission of evidence in aggravation during sentencing is controlled by R.C.M. 1001(b)(4), which states:

> The trial counsel may present evidence as to any aggravating circumstances directly relating to or resulting from the offenses of which the accused has been found guilty. Evidence in aggravation includes, but is not limited to, evidence of financial, social, psychological, and medical impact on or cost to any person or entity who was the victim of an offense committed by the accused . . . .

Furthermore, sentencing evidence is subject to the requirements of Military Rule of Evidence (Mil. R. Evid.) 403. *United States v. Hursey*, 55 M.J. 34, 36 (C.A.A.F. 2001) (citing *United States v. Rust*, 41 M.J. 472, 478 (C.A.A.F. 1995)). When the military judge conducts a proper balancing test under Mil. R. Evid. 403 on the record, the ruling will not be overturned absent a clear abuse of discretion; the ruling of a military judge who fails to do so will receive correspondingly less deference. *Hursey*, 55 M.J. at 36*; Manns*, 54 M.J. at 166. The military judge in this case did not conduct a Mil. R. Evid. 403 balancing test on the record.

We find that the military judge did not abuse his discretion in permitting SSgt RC to provide her unsworn statement both orally and in a writing, a mode now specifically authorized by the President. However, we find that the military judge abused his discretion in permitting SSgt RC to present the final paragraph of her statement (both in its oral and written form). Other than a single sentence omitted from the quotation above, the paragraph was, as the military judge put it, "completely improper." It did not constitute victim impact information and was not otherwise permitted under the Rules for Court-Martial or the Uniform Code of Military Justice.

Article 6b is not a blanket authorization for a victim to state to the sentencing authority whatever he or she might desire. "The right to be reasona-

bly heard at . . . a sentencing hearing" does not transform the sentencing hearing into an open forum to express statements that are not otherwise permissible under R.C.M. 1001. R.C.M. 1001A(c) now limits a victim's unsworn statement to victim impact and matters in mitigation, but it did not apply at the time of Appellant's trial. Prior to the promulgation of R.C.M. 1001A(c), SSgt RC's unsworn statement arguably could have properly gone into other aggravation matters and, with a proper foundation, Appellant's rehabilitative potential. However, there was no foundation provided for SSgt RC to provide an opinion regarding Appellant's need for "help" or suitability for sex offender treatment. Moreover, her recommendation for a particular sentence was clearly improper. *See United States v. Ohrt*, 28 M.J. 301, 303 (C.M.A. 1989).

Having found error, we must determine whether Appellant was prejudiced. The test for prejudice is whether the error substantially influenced the adjudged sentence. *United States v. Sanders*, 67 M.J. 344, 346 (C.A.A.F. 2009); *United States v. Griggs*, 61 M.J. 402, 410 (C.A.A.F. 2005); *United States v. Boyd*, 55 M.J. 217, 221 (C.A.A.F. 2001). Because the erroneously permitted statements advocated for "a minimum of 3 and a half years in confinement," we are convinced that Appellant, who was sentenced to no confinement, was not prejudiced by the military judge's error.

## C. Composition of the Court-Martial

The constitutionality of an act of Congress is a question of law that appellate courts review de novo. *United States v. Ali*, 71 M.J. 256, 265 (C.A.A.F. 2012).

Appellant argues that having a nine[5]-member panel that is not required to produce a unanimous verdict is unconstitutional. In doing so, he acknowledges that the decision by this court of *United States v. Spear*, No. ACM 38537, 2015 CCA LEXIS 310 (A.F. Ct. Crim. App. 30 Jul 2015) (unpub. op.), *pet. denied*, 75 M.J. 50 (C.A.A.F. 2015), addressed this very issue and was decided contrary to Appellant's position. Appellant requests we re-examine this issue.

Appellant's argument in this case focuses on due process under the Fifth Amendment,[6] but cites the Supreme Court decisions in *United States v.*

---

[5] Appellant's panel initially consisted of nine members, but one was excused during the trial, resulting in eight members participating in determining the court's findings and sentence.

[6] U.S. CONST. amend. V.

*Ballew*, 435 U.S. 223 (1978), *Burch v. Louisiana*, 441 U.S. 130 (1979), and *McDonald v. City of Chicago*, 561 U.S. 742 (2010), all of which are founded upon the Sixth Amendment.[7] Our superior court has repeatedly held that the Sixth Amendment rights regarding a jury trial do not apply to courts-martial. *See, e.g., United States v. Easton,* 71 M.J. 168, 175 (C.A.A.F. 2012) (citing *Ex parte Quirin*, 317 U.S. 1, 39 (1942)); *United States v. Leonard*, 63 M.J. 398, 399 (C.A.A.F. 2006); *United States v. Wiesen*, 57 M.J. 48, 50 (C.A.A.F. 2002); *United States v. Curtis*, 32 M.J. 252, 267–68 (C.M.A. 1991) (rejecting a similar argument to Appellant's within the context of a death penalty case); and *United States v. McClain*, 22 M.J. 124, 128 (C.M.A. 1986).

In addition to arguing that a trial by jury of less than six members violates the Sixth Amendment (even though he was tried by eight court members), Appellant cites no case law supporting his position that this case should be treated differently than every other general court-martial tried since 31 May 1951, when the Uniform Code of Military Justice and the Manual for Courts-Martial went into effect.

As this court opined in *Spear*, "[j]udicial deference is 'at its apogee' when an appellant is challenging the authority of Congress to govern military affairs. It is the appellant's heavy burden to demonstrate that Congress' determinations about panel size and unanimity should not be followed." *Spear*, 2015 CCA LEXIS 310, at *5 (citations omitted). We find the analysis of *Spear* persuasive. As in *Spear*, Appellant here has failed to meet his heavy burden to demonstrate that Congress' determinations should not be followed.

## D. Ineffective Assistance of Counsel

Pursuant to *Grostefon*, Appellant asserts that his trial defense counsel provided ineffective assistance of counsel by withdrawing their motion for a mistrial, failing to move to compel production of the victim's journal and text messages, and failing to interview the victim before trial. Appellant's trial defense counsel provided declarations addressing the allegations raised by Appellant in his assignments of error and supporting declaration.

We review claims of ineffective assistance of counsel de novo, applying the two-part test outlined by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *See also United States v. Tippit*, 65 M.J. 69, 76 (C.A.A.F. 2007). Under that test, "in order to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in preju-

---

[7] U.S. CONST. amend. VI.

dice." *United States v. Green*, 68 M.J. 360, 361 (citing *Strickland*, 466 U.S. at 687; *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009)).

The deficiency prong requires Appellant to show his counsel's performance fell below an objective standard of reasonableness, according to the prevailing standards of the profession. *Strickland*, 466 U.S. at 688. To determine whether the presumption of competence has been overcome as alleged by an appellant, we examine whether there is a reasonable explanation for counsel's actions and whether defense counsel's level of advocacy fell measurably below the performance ordinarily expected of fallible lawyers. *United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011).

The prejudice prong requires Appellant to show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In doing so, Appellant "must surmount a very high hurdle." *United States v. Moulton*, 47 M.J. 227, 229 (C.A.A.F. 1997) (citing *Strickland*, 466 U.S. at 689). This is because counsel is presumed competent in the performance of his or her representational duties. *United States v. Anderson*, 55 M.J. 198, 201 (C.A.A.F. 2001). Thus, judicial scrutiny of a defense counsel's performance must be "highly deferential and should not be colored by the distorting effects of hindsight." *United States v. Alves*, 53 M.J. 286, 289 (C.A.A.F. 2000) (citing *Moulton*, 47 M.J. at 229).

"[Appellant] bears the burden of establishing the truth of the factual allegations that would provide the basis for finding deficient performance." *Tippit*, 65 M.J. at 76 (citing *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991)). The factual basis supporting Appellant's allegations of legal error are uncontroverted. Instead, the resolution of Appellant's claims turn on the reasoning behind the tactical and strategic litigation decisions made by trial defense counsel in this case.

Trial defense counsel's declarations and the record of trial conclusively establish that trial defense counsel made the motion for mistrial during the testimony of SSgt RC when it initially appeared that the Government had failed to produce some of her text messages. While arguing the motion, trial defense counsel realized that the prosecution had never seen the text messages and government investigators were no longer in possession of them. Sensing that the military judge was prepared to order SSgt RC to make them available and fearing that their contents would be more damaging to Appellant's case than to the prosecution's, trial defense counsel made a tactical decision to withdraw the motion. For the same reason, trial defense counsel did not pursue production of SSgt RC's journal, which she had thus far refused to provide to the Government. These decisions, in a case in which Appellant strongly asserted that the victim's account was uncorroborated, was objectively rea-

sonable. Contemporaneous text messages corroborating SSgt RC's trial testimony would have seriously undermined Appellant's trial strategy.

Regarding trial defense counsel not interviewing SSgt RC before trial, they made the tactical decision that nothing would be gained by doing so, other than to prepare her for their lengthy trial cross-examination. This strategic decision was based primarily on the fact that trial defense counsel fully questioned SSgt RC during the Article 32 hearing and was provided a verbatim transcript of her Article 32 testimony. They felt fully armed with all the ammunition they needed to question her in a professional and effective manner at trial. Based on our review of trial defense counsel's extensive cross-examination of the victim during her day and one-half long trial testimony, we are satisfied that Appellant has failed to overcome the presumption that his trial defense counsel were competent and provided him effective assistance of counsel.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

KURT J. BRUBAKER
Clerk of the Court